CHARLES NAPIER (THE AMERICAN SUGAR REFINING
COMPANY) *vs.* PEOPLES STORES COMPANY.

*First Judicial District, Hartford, October Term, 1922.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

An absolute refusal of the buyer to receive the merchandise ordered
by him, even if shipped, made during the period fixed for delivery,
constitutes an immediate breach of his contract and gives rise to a
present cause of action.

Under such circumstances the seller is not bound to tender delivery
of the goods before bringing suit, since that formality has been·
waived by the buyer's unqualified refusal to accept.

Such breach is not cured by the subsequent ineffectual efforts of the
seller to induce the buyer, and still later its receiver, to withdraw
their refusals and accept the goods ordered.

No present right of action can arise from the refusal of a buyer to
accept goods not yet deliverable under the contract, unless the
seller signifies his election to treat the buyer's premature repudia-
tion as an anticipatory breach.

The appointment of a receiver and his failure to adopt a contract execu-
tory in whole or part at that time, operates as a breach of the con-
tract from the date of his appointment and entitles the other party
to the contract to present his claim for damages in the receiver-
ship proceedings, and to share in the assets of the estate with
other creditors whose contracts were broken before the receiver
was appointed.

The foregoing rule applies to all receiverships whether voluntary or
involuntary.

In questions of commercial law, uniformity of decision in Federal and
State courts is eminently desirable, and especially so in receiver-
ship cases.

The case of *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, overruled in
part.

Argued Oct. 3d, 1922, reargued Jan. 2d—decided Mar. 1st, 1923.

APPLICATION by the American Sugar Refining Com-
pany, in receivership proceedings, for· the allowance
of its claim against the Peoples Stores Company for

* See volume for first district, January Term, 1923, for briefs filed
on the reargument. *Reporter.*

the breach of its contracts for the purchase of sugar, brought to the Superior Court in Hartford County and heard by a committee who found and reported the facts; the court, *Webb, J.*, accepted the report of the committee and disallowed the claim, and from this judgment the claimant appealed. *Error and cause remanded with direction to allow claim.*

It appears from the report of the committee that on May 29th, June 3d and June 5th, 1920, the defendant corporation and the claimant entered into four separate contracts, by orders and acceptances, for the purchase by defendant and sale by plaintiff of sugar, on the following terms:—

Contract A, on May 29th for 50 bbls. or equivalent, at the basing price of 22½ cents per pound, delivery to be made during July, 1920, or as soon thereafter as possible.

Contract B, on May 29th for 50 bbls. or equivalent, at the basing price of 22½ cents per pound, delivery to be made during August, 1920, or as soon thereafter as possible.

Contract C, on June 3d for 25 bbls. or equivalent, at the basing price of 22½ cents per pound, delivery to be made during September, 1920, or as soon thereafter as possible.

Contract D, on June 5th for 25 bbls. or equivalent, at the basing price of 22½ cents per pound, delivery to be made during October, 1920, or as soon thereafter as possible.

According to the terms of all of these contracts an "assortment" or description of what kind of sugar was to be shipped was to be furnished by the buyer to the seller before the first day of the month during which shipments were to be made. The seller reserved the right under each contract to ship available grades if assortment was not furnished promptly.

Assortments were furnished under contracts A and B only. No sugar was ever shipped under any of these four contracts. Between June 1st and September 1st there were frequent delays in shipping sugar due to strikes and embargoes, but no proof was made of their effect on these contracts. On August 18th, 1920, defendant wired claimant to ship no more sugar until further notice. On September 9th, defendant asked the claimant to cancel all orders for sugar, which request was refused. After September 9th, and before the receivership, defendant refused to take any sugar from the claimant, and on September 22d or 23d, the defendant refused to furnish further assortments and refused to accept sugar, if it were shipped. On September 24th a temporary receiver of the defendant was appointed; on October 5th, H. H. Hunt was substituted as temporary receiver, and afterward appointed permanent receiver.

The complaint was in the nature of a creditors' bill, and its allegations were admitted by an answer filed on the same day. Up to October 9th, 1920, the claimant repeatedly urged the receiver to accept deliveries of sugar under the contracts, but the receiver declined to do so, and on October 9th repudiated all of the contracts. The receiver disallowed a claim for damages, and the claimant, within the time limited, filed this application for allowance.

On the foregoing facts, the committee reported that the refusal of the Stores Company to take any sugar from the sugar company, made before the temporary receivership, was a repudiation of all four of the contracts; that the repudiation was not accepted by the sugar company prior to the appointment of the receiver; and that, therefore, there had been no breach of contract by the Stores Company on which a claim for damages could be based.

To the acceptance of this report the claimant remonstrated, claiming that on the facts found contracts A, B, and C, had been breached by the defendant before the receivership; and that contract D was breached by the appointment of the receiver.

The court accepted the committee's report and disallowed all the claims, on the authority of *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 55 Atl. 599.

*Alvan Waldo Hyde,* for the appellant (the American Sugar Refining Company).

*George H. Day,* for the appellee (the Receiver of the Peoples Stores Company).

BEACH, J. This cause was argued at the October Term, 1922, and as the result of that argument we were of opinion that, on the facts found, contracts A, B, and C had been broken by the defendant before the appointment of the receiver, and that contract D remained in force and unbroken at that date. A reargument was ordered at the January Term on the single point whether the claim arising under contract D was allowable. As the questions involved are quite distinct, we discuss them separately.

Contracts A, B, C.

Under contract A, the sugar was to be delivered within the month of July, or as soon thereafter as possible; under contract B, within the month of August, or as soon thereafter as possible; and under contract C, within the month of September, or as soon thereafter as possible. The temporary receiver was not appointed until September 24th, and it is found that on September 23d—taking the latest date—the defendant repudiated all four of the contracts, by refusing to furnish further assortments and by refusing to accept sugar if it were shipped. On that date the time had arrived

within which the defendant was bound to take all the sugar contracted for by contracts A, B, and C. Under A and B assortments had been furnished; and under C the failure of the defendant to furnish an assortment had left the claimant free to ship available grades. On the findings all of the contracts were in full force, and the defendant was in the position of a debtor whose debt is payable on demand. It was under a present obligation to accept on shipment, and when it repudiated that obligation, by refusing to accept sugar if it were shipped, the contracts were broken. No waiting period remained before the time for performance within which the defendant might, unless notified of the claimant's election to treat the contract as prematurely ended, change its mind, and tender performance when performance became due. A present obligation was repudiated and a present cause of action arose. The claimant was not bound to tender delivery of the sugar before bringing suit, because the defendant had waived that formality by refusing to accept it if it were shipped. Besides, the claimant had repeatedly asked the defendant to take delivery. Sales Act, §§ 4714, 4730. As to these three contracts the breach was complete, and a right of action for damages arose before the receiver was appointed on September 24th. The breach was not cured by the subsequent ineffectual attempts of the claimant to induce the defendant and the receiver to withdraw the repudiation, and the rule in *Wells* v. *Hartford Manilla Co.* has no application to the claims arising under contracts A, B, and C.

### Contract D.

The claim arising out of this contract stands on a different footing. The time specified for delivery had not begun to run when the repudiation occurred. No present right of action could arise unless the claimant signified its election to treat the defendant's premature

repudiation as an anticipatory breach. It did not do so, and on the findings contract D remained in force and unbroken when the receiver was appointed. If we are to follow the rule laid down in the *Hartford Manilla Co.* case, the claim was properly disallowed, or at least it should be postponed in payment until all claims matured before the receivership have been paid. But in view of recent developments in the law as to the provability of unmatured claims in receivership proceedings, we deem it advisable to re-examine the subject.

When the *Hartford Manilla Co.* case was decided, in 1903, there was an indecisive conflict of authority upon the question whether claimants, who had been deprived by a receivership of the fruits of executory contracts unbroken at the date of the appointment, were or were not entitled to share in the assets on a parity with claimants whose contracts had been breached before the receiver was appointed. There were indeed but few decisions directly in point, and none is cited in the opinion.

So far as we know, there were in 1903 four cases, three of them in the New Jersey reports, holding that such unmatured claims were provable. *Spader* v. *Mural Decoration Mfg. Co.* (1890), 47 N. J. Eq. 18, 20 Atl. 378; *Rosenbaum* v. *U. S. Credit System Co.* (1898), 61 N. J. Law, 543, 40 Atl. 591; *Bolles* v. *Crescent Drug & Chemical Co.* (1895), 53 N. J. Eq. 615, 32 Atl. 1061, and *New York Security & Trust Co.* v. *Lombard Inv. Co.* (1896), 73 Fed. Rep. 537. Against these stood *People* v. *Globe Mut. Life Ins. Co.* (1883), 91 N. Y. 174; *Lenoir* v. *Linville Imp. Co.* (1900), 126 N. Car. 922, 36 S. E. 185, and *Malcomson* v. *Wappoo Mills Co.* (1898), 88 Fed. Rep. 680.

This unsatisfactory condition of the authorities remained, with some reinforcement on each side, until

the prolonged and complicated receiverships of the Metropolitan Street Railway and the New York City Railways invited a thorough reëxamination of the principles underlying the provability of claims in receivership proceedings. Judge Noyes said of the state of the law in 1912: "This evolution of the creditors' bill into the proceeding by which courts of equity undertake the general administration of the estates of corporations has not, however, brought with it any well defined principles with respect to the provability of claims of creditors. Leading textbooks hardly mention the subject and the authorities are few and far between. It is altogether a mistake to assume that cases like the present can be determined by the application of hard and fast rules. . . . They have yet to be formulated." *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 Fed. Rep. 721, 737, 738. In the same year the Supreme Court of Louisiana in a well-reasoned opinion, based on equitable considerations, allowed a claim based on a contract for the delivery of lumber, which had been partly performed and was in force and unbroken when the receiver was appointed,— the claim being for the difference between the contract price of the undelivered portion of the lumber contracted for, and its market price at the date of the receivership. And in doing so it observed that the weight of authority in this country was the other way. *Peck* v. *Southwestern Lumber & Exporting Co.*, 131 La. 178, 59 So. 113.

Such was, in substance, the state of the authorities when the leading case of the *Metropolitan Express Company's* claim was decided by the Circuit Court of Appeals in this circuit, reported under the name of *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 Fed. Rep. 721, 735. The claimant had a contract by which the Metropolitan Railway Company had leased to it

Napier *v.* Peoples Stores Co.

for the term of twenty years the exclusive right of moving express matter over its system of street railways. The business was operated by an assignee on terms profitable to the Express Company, and the contract was in full force with some years to run when the receivers were appointed. They declined to adopt the contract, and made another with a third party on better terms. The claim was for loss of profits.

Judge Noyes, in an opinion which has since practically controlled the current of decision (*In re Mullings Clothing Co.*, 238 Fed. Rep. 58; *Curtis* v. *Walpole Tire & Rubber Co.*, 227 Fed. Rep. 698; *McLean Sons Co.* v. *Butler & Co.*, 227 Fed. Rep. 325; *In re Ross & Son*, 10 Del. Ch. 434), stated the general principles governing the provability of claims in receiverships, and allowed the claim. The following excerpts will indicate the course of reasoning: "Equitable considerations must govern and the underlying ones are these: The assets of an insolvent corporation belong to its creditors. Although not, strictly speaking, a trust fund, they partake of the nature of one. The administration of the estate is for their benefit. Its purpose is to make an equitable distribution. Equality is equity. Debts and liabilities, present and future, certain and contingent, stand upon the same *equitable* basis. If delays were unimportant, the settlement of estates would be kept open until contingencies should become certainties. If courts were omniscient, distribution would always be through the resolving of all contingencies and the ascertainment of the present worth of all demands. But courts cannot look with certainty into the future. Delays are important. The settlement of estates cannot be held open to await contingencies. Orderly administration requires that at some reasonably speedy time all claims should be so liquidated as to afford a basis for distribution."

All claims are divided into two classes: "(1) Claims of which the worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of the estates. (2) Claims which are so uncertain that their worth cannot be so ascertained. The second class of claims cannot be proved. They may be highly meritorious, but they cannot share in the estate because their amounts cannot be ascertained. The first class of claims ought to be proved and share in the estate and this whether they are overdue accounts, immature notes, or claims for damages for breach of contract coinciding with or following the receivership. It is impossible to point to any equitable ground which would justify a court of equity in excluding the holders of any of such claims from sharing in the estate of their debtor.

"One more question remains for consideration in formulating any general equitable rule. A time should be stated with respect to which the status of claims should be fixed. The briefs upon these appeals indicate a general impression among counsel that the date of the appointment of the receivers is the time which controls. Apparently this view is based upon the earlier theory of the courts that a creditors' bill is an equitable levy equivalent to a general execution in favor of creditors who at the time it is filed are in a position to obtain execution or attachment. But, as we have seen, the right to share in corporate assets is, at the present time, not confined to creditors who might themselves have instituted separate proceedings, nor are the assets to be shared in those alone which could be seized upon execution. The present extension of equitable jurisdiction over corporations would be wholly unjustifiable if it were for the benefit of a particular class of creditors. Consequently the time of the appointment of the receiver constitutes no logical or

necessary date for determining the provability of demands and it should be fixed as equity, with due regard to convenience, may require. . . .

"In the present case the appointment of the receivers for the Metropolitan and City Companies completely disabled those corporations from carrying out the contract with the Metropolitan Express Company. That contract granted the right to do the 'express, freight and delivery business' on the roads of the Metropolitan system. The receivers took possession of the roads and excluded the Express Company and its assignee. Certainly there was absolute 'disenablement of performance.' The railway companies also practically admitted their insolvency when the receivers were appointed and joined in the prayers for their appointment.

"It is clear, then, upon the authorities cited, that the contract in question was broken by the insolvency of the Railway Companies and the appointment of the receivers unless the contention of the appellees be well founded that a receivership cannot operate to break an executory contract because the receivers are allowed a period in which to act upon it.

"As we have seen in the Termination of Lease Proceeding, a receiver is entitled to a reasonable time in which to determine whether to adopt or renounce the contracts of the corporation for which he is appointed. During this trial period the operations under the contract may go on and the legal consequences flowing from the fact of the receivership may be suspended in their operation. If the receiver elect to adopt the contract, his adoption relates back to the beginning of the receivership and the contract continues as if nothing had taken place. That which would otherwise have amounted to a breach of the contract does not have that effect on account of the receiver's accept-

ance of it. On the other hand, it necessarily follows that when a receiver rejects a contract, his rejection relates back to the beginning of the receivership and the breach of the contract takes place as of that time. Any other rule would be altogether inequitable and one-sided."

Judge Noyes' opinion seems to cover the whole ground, with one exception, namely, that it does not deal specifically with the case of an involuntary receivership, because that condition was not present. This omission has, however, been supplied by the Supreme Court of the United States in the case of *Central Trust Co.* v. *Chicago Auditorium Asso.* (1916), 240 U. S. 581, 36 Sup. Ct. 412, which settled a conflict of decision in the lower Federal courts by holding that bankruptcy, whether voluntary or involuntary, constituted a breach of the executory contracts of the bankrupt. The claim allowed was for loss of profits due to the termination by bankruptcy of an unexpired lease of certain exclusive privileges in respect of the transfer and livery business controlled by the Auditorium Hotel. In that case the bankruptcy was involuntary, and in answering the objection that there could be no anticipatory breach except by the voluntary act of the hotel corporation, it is said: "As was said in *Roehm* v. *Horst*, 178 U. S. 1, 19 [20 Sup. Ct. 780]: 'The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due.' Commercial credits are, to a large extent, based upon the reasonable expectation that pending contracts of acknowledged validity will be performed in due course; and the same principle that entitles the promisee to continued willingness entitles him to continued ability on the part of the promisor. In short, it must be deemed

an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement. . . . We therefore conclude that the Circuit Court of Appeals was correct in holding that the intervention of bankruptcy constituted such a breach of the contract in question as entitled the Auditorium Association to prove its claim."

In 1918 the question of the provability in receivership proceedings of a claim for damages for the premature termination, by the appointment of a receiver, of a lease of real estate, came before the Supreme Court in *Wm. Filene's Sons Co. v. Weed,* 245 U. S. 597, 38 Sup. Ct. 211. The lease contained special covenants which took it out of the common-law rule that a lessor who retakes possession of the premises cannot recover damages for the unexpired term; and in allowing the claim Mr. Justice Holmes said, pp. 601, 602: "We perceive no ground that would justify the rejection of the petitioner's proof for the whole sum subject to the discount agreed. Certainly the fact that the termination of the lease happened after the filing of the bill has no such effect, although the sum was not presently payable until then. When a statutory system is administered the only question for the courts is what the statutes prescribe. But when the courts without statute take possession of all the assets of a corporation under a bill like the present and so make it impossible to collect debts except from the court's hands, they have no warrant for excluding creditors, or for introducing supposed equities other than those determined by the contracts that the debtor was content to make and the creditors to accept. In order to make a dis-

tribution possible they must of necessity limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of a filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made. *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 Fed. Rep. 721, 740, 741." This refers to the fact that the claim was disallowed by the lower court on the analogy of the rule in bankruptcy then prevailing in the First Circuit.

These decisions created a strong preponderance of authority in favor of the allowance of unmatured claims in receiverships. They have settled the law in the Federal courts. Such claims are now allowable in this district, not only in bankruptcy, but in Federal receiverships. The question is of growing importance, as indicated by the fact that three cases on the point are now pending in this court. It is a question of commercial law, in respect of which uniformity of decision in the Federal and State courts is eminently desirable, and especially so in receiverships, in order to avert a race for jurisdiction in the interest of one or another class of creditors, with its possibilities of duplicate litigation and conflict over the possession of assets.

For these reasons of public policy, and because we are convinced that the later decisions are sound in principle and equitable in result, and because no rule of property stands in the way, we feel compelled to overrule the case of *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 55 Atl. 599, in so far as it holds that claims arising out of executory contracts, in respect of which no anticipatory breach existed before the date of the receivership, are not allowable.

Nothing can be added to the foregoing decisions save by way of elaboration, and to that end it may be

Napier *v.* Peoples Stores Co.

observed that as to all contracts which are to be performed within ordinary time limits, the disability created by the receivership—in case the receiver does not elect to perform—is complete, whether the complaint asks for a dissolution of the corporation, or whether it contemplates the possibility of a resumption of business in the remote future. Furthermore, the disability created by a receivership is unalterable by either or both parties. The promisee cannot hold the promisor to performance, for the law forbids it to perform. The only thing the promisee can do is to acquiesce and file his claim. When he does that, he does all that the law ought to require him to do toward manifesting his acquiescence in the anticipatory breach.

As to the equities, the right to performance of an executory contract, or the right to substituted performance by payment of damages, is a property right. The receiver as the representative of the defendant corporation is given the option to compel performance, if that be profitable to the estate, or to collect damages for nonperformance, notwithstanding the receivership. That being so, it is impossible to say with any pretense of equity that the correlative property right of the other party to the contract ought to be extinguished by the receivership in case performance is not profitable to the estate.

There is error, the judgment is set aside, and the cause remanded with directions to allow the claims.

In this opinion the other judges concurred.