**T. A. D. JONES CO. v. WINCHESTER RE-
PEATING ARMS CO.**

No. 2109.

District Court, D. Connecticut.

Jan. 25, 1932.

Philip Pond, Joseph I. Shrebnik, and Samuel H. Platcow, all of New Haven, Conn., for claimant Southeastern Inv. Co.

Bristol & White and Albert H. Barclay, all of New Haven, Conn., and Eli J. Blair of New York City, for receivers.

HINCKS, District Judge.

This is a receivership in equity brought originally upon a creditor's bill, the corporate defendant assenting. The receivers were appointed on January 22, 1931. By order of court, the time for presenting common claims was limited to April 28, 1931.

The facts upon which this claim is predicated are, in part, set forth in a stipulation between the parties.

It appears that on April 1, 1920, one Davis, by instrument hereinafter referred to as the "original lease," leased premises known as No. 32 West Forsyth street in Jacksonville, Fla., to the defendant corporation[1] for a term from January 1, 1921, to December 31, 1940, at a rental of $16,800 per year for the first ten years and $19,200 per year for

---

[1] In fact, Davis was not himself the owner, but lessee from one Livingston. And the Davis lease (referred to as the "original lease") ran not directly to the defendant, but to a predecessor of the defendant who received the same by assignment. Reference to the Livingston lease and to the defendant's assignor is omitted in the opinion for simplification of statement.

the last ten years of said term, all payable in equal monthly installments in advance. The lease provided that the defendant might assign the lease or underlet the premises, in whole or in part, "provided the lessee shall be and remain liable to pay the rent, etc." The lease further provided that, if rent should remain unpaid for thirty days, "it shall be lawful for the lessor to begin action for the recovery of said rent, or by summary proceedings or otherwise, to enter into and upon the said demised premises * * * and the same to have again, re-possess and enjoy as of the lessor's first and former estate, anything in this lease to the contrary notwithstanding. In the event the lessee shall be adjudicated bankrupt or insolvent according to law, or if any assignment shall be made for the benefit of creditors, the lessor may at lessor's option terminate this lease * * * and the lessee hereby agrees that in either of the events as herein set forth, all its right under said lease shall cease and terminate." The lease contained no express provision that, upon repossession of the lessor for the lessee's breach, the lessor might relet the premises for the lessee's account.

On April 1, 1926, the defendant transferred its entire interest in the leasehold estate thus acquired to the Bayshore Company, a Florida corporation, by written instrument whereby the defendant covenanted that the Bayshore Company should have peaceable possession of the premises for the balance of the term of the original lease, and the Bayshore Company covenanted to pay the rent reserved in the original lease in accordance with its terms to the order of Davis, the lessor in the original lease, and to mail duplicate receipts for each payment of rent to the defendant. By this instrument the Bayshore Company expressly assumed the obligations of all of the defendant's covenants in the original lease. The Bayshore Company went into possession of the premises under this instrument, and continued in possession, paying rent direct to Davis, the original lessor, until hereinafter stated.

Such was the situation of the parties when, on January 22, 1931, receivers for the defendant were duly appointed in these proceedings.

On January 27, 1931, said Davis assigned all his interest as lessor in said original lease to Southeastern Investment Company, the claimant herein, and duly notified the defendant and its receivers, as well as the Bayshore Company, of said assignment.

Thereafter for a time the Bayshore Company continued in occupation of the premises and to pay the rent reserved under the original lease, making payments direct to Southeastern Investment Company.

On March 30, 1931, or shortly thereafter, within the time limited therefor by the court, the receivers herein notified the claimant herein, as well as the Bayshore Company, that they canceled the original lease and renounced all further liability of the defendant with respect thereto. Thereupon the Bayshore Company notified the claimant herein that it was thereby released from the obligation of the lease, and on April 4, after paying all rent accrued to date, vacated and gave up the premises.

On April 23, 1931, the claimant herein notified the receivers and the Bayshore Company that it would take possession of said premises for the account of the receivers and the Bayshore Company severally, and would rent the same to the best of its ability, and would credit its claim against the receivers with whatever amounts it was able to realize from rents thus collected, saying in this connection: "You of course, understand this course of action will be taken in an endeavor to minimize the damages which will be suffered by the Southeastern Investment Company of Savannah, Georgia, by reason of your default; and shall not operate to release you or the Winchester Company or any one claiming under it, from liability on account of said lease."

Thereupon the claimant took possession of the premises, and on July 1, 1931, succeeded in negotiating with the Bayshore Company a lease, dated as of May 1, 1931, direct between the claimant and the Bayshore Company for the remainder of the term of the original lease, at a rental of $12,000 per year payable monthly. This new lease contained no reservation of rights against either the Bayshore Company or the defendant on account of any claim for breach of contract then existing.

On all the evidence I find that the fair rental value of the demised premises on May 1, 1931, was $12,000 per annum, and that the rent reserved to the claimant under its said lease to the Bayshore Company (and the reasonable rental value of the premises as of May 1, 1931) is in the aggregate less by $69,600 than the rent reserved in the original lease.

Upon these facts the claimant, standing as it does in the shoes of the original lessor,

claims that it is entitled to the allowance of a common claim for the difference between the aggregate of unpaid rentals reserved to it in the original lease and the aggregate of rentals reserved to it in the new lease negotiated by it with the Bayshore Company; this difference being, according to my finding, about $69,600. The claim is contested by the receivers.

■ When the defendant entered into the original lease with Davis, it thereby became bounden to him, by privity of estate, in that it received of him an estate for years; and by privity of contract, in that it covenanted with him, among other things, to pay the stipulated rent.

■ The instrument of April 1, 1926, whereby the defendant transferred its entire interest in the leasehold estate to the Bayshore Company, which expressly assumed, among other things, the defendant's covenant to pay the rent reserved in the original lease, I hold to be an assignment, not a sublease.

■ By this assignment, and the acceptance thereof by the Bayshore Company, followed by the monthly payment of rent direct from the Bayshore Company to Davis, the original lessor, a change in the relationships of course took place. The Bayshore Company, through the assignment to it, assented to by the original lessor, both in the original lease and by the receipt of rent, came into privity of estate with the original lessor, but the privity of estate between the defendant and its lessor was thereby broken. And the Bayshore Company, by expressly assuming all the covenants of the lease in its instrument of assignment from the defendant, came into privity of contract with the original lessor. But of course the privity of contract between Davis, the original lessor, and the defendant, arising from the covenants of the original lease, remained intact notwithstanding the assignment; there being no evidence whatever that the defendant was released from the obligation of its covenants by its lessor prior to the receivership.

■ Ordinarily, of course, upon the assignment of an estate for years, the original lessee becomes a surety for the performance by its assignee of the obligation of its covenants, including the covenant to pay rent. In the present case, this relationship is indicated not alone by the attendant operation of law, but also by the express provision of the original lease whereby, in the event of an assignment, it was provided that the lessee "shall be and remain liable to pay the rent."

■■ The position, then, of the defendant, after the assignment and prior to the receivership, was that of a surety for the rent. As a surety, it was directly liable for the rent to the original lessor, Davis.

Its liability as surety was more than the secondary liability of a guarantor, conditioned upon the ability of the assignee (i. e., the principal) to pay. As between the Bayshore Company and the defendant (i. e., as between principal and surety), doubtless the liability of the Bayshore Company was precedent. But, as between Davis and his obligors, the liability both of the Bayshore Company and the defendant was primary and direct. In the event of a breach, he could look to either at his option. In re Tidus (D. C.) 4 F.(2d) 558.

■■ The intervention of the receivership in itself wrought no change in these relations. The same reciprocal rights and obligations continued. That the receivers came into possession of the defendant's assets caused no change in the possession of the premises in question, for, at the time, the premises in question were in possession of the Bayshore Company which, notwithstanding the receivership, was entitled to all the benefits of its leasehold estate as against all the world, including Davis, the lessor. This much seems clear.

■■ Nor did the renunciation by the receivers of the defendant's obligation under the original lease, of itself work any change in the legal relationships theretofore existing. Clearly the receivers by mere notice could not change the reciprocal relationships between the Bayshore Company and Davis. It is, I think, equally clear that such a notice, without more, could not operate as a breach of the defendant's obligation to Davis. The bare repudiation by the receivers was insufficient to constitute an anticipatory breach, because it did not necessarily disable the defendant from the performance of its covenants. Since, prior to receivership, the defendant by its assignment had arranged for the performance of its covenants by its assignee, it was still possible that its covenants might thus be performed to the full, notwithstanding its receivership and the repudiation by the receivers of its obligation as surety.

It is true that such cases as Central Trust Company v. Chicago Auditorium Assoc., 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, and Napier v. Peoples Stores Co., 98 Conn. 414, 120 A. 295, 33 A. L. R. 499, hold that bankruptcy and receiverships

work an anticipatory breach of executory contracts. But these cases, and a host of others, are concerned with defaulting promisors other than sureties. In the absence of a breach, whether by anticipation or otherwise, by the principal, logic leaves no room for the application of the doctrine of anticipatory breach against a surety.

However that may be, when the lease was repudiated by the receivers and thereafter the assignee completely abandoned the premises and disclaimed under the lease, surely then at last a breach of the lease occurred by anticipation. In re Mullings Clothing Co. (C. C. A.) 238 F. 58.

But it is incumbent upon the claimant to establish not only a valid cause of action, but also substantial damages, before its claim can be allowed. If, as I hold, the basis of the claim is a breach of contract by anticipation, clearly the claimant was in duty bound to make reasonable effort to mitigate the damages arising from the breach. Was that done in this case?

With the Bayshore Company twice bounden to the claimant under the relationships described above, the claimant gave the Bayshore Company a new lease on the same premises at a substantially reduced rental. Beyond question this operated as a discharge of all obligation on the part of the Bayshore Company to the claimant under the original lease and its assignment. Why this was done is not even suggested by the stipulated facts or the evidence. Certainly its effect was not to mitigate damages, but rather to enhance or create damages. For aught that appears, the claimant had but to enforce its rights against the Bayshore Company, and there would have been no damages at all, except possibly the expense of such enforcement, of which there is no evidence. On this ground alone the claim should be disallowed.

But the same conclusion is required by other considerations. In fact, the new lease to the Bayshore Company contained no reservation to the claimant of any rights whatever against either the Bayshore Company or the defendant (or its receivers). We have, then, a situation where the claimant, a creditor promisee, without reservation against the surety, makes a wholly new contract with the principal. On fundamental principles of the law of suretyship, the result is to discharge the surety.

And on another ground the claim must be denied. For, when the claimant gave a new lease to the Bayshore Company, for the reasons already indicated it was precluded from claiming that it was acting either on the account of the defendant or the Bayshore Company to mitigate damages. On the contrary, the effect of this new lease was completely to discharge the Bayshore Company of all obligation arising out of the original lease. Such a discharge of the defaulting assignee of the leasehold estate necessarily operated as an acceptance of the abandonment by the assignee. It results that a surrender of the leasehold estate took place by operation of law. The estate created by the original lease being thus extinguished, all obligation on the part of the defendant or its receivers originating under the original lease, was wholly discharged.

The claim must be disallowed, and it is ordered accordingly.