350 P.2d 206

**T. D. FRENCH, Plaintiff-Appellant,**

**v.**

**NABOB SILVER–LEAD COMPANY, a corporation, Defendant-Respondent.**

No. 8752.

Supreme Court of Idaho.

March 8, 1960.

Eugene McCann, Chas. E. Horning, Wallace, for appellant.

H. J. Hull & Sons, Wallace, for respondent.

McQUADE, Justice.

Respondent owns a number of mining claims on Pine Creek in Shoshone County, Idaho. Appellant leased a part of respondent's claims under a written lease for a period of two years from September 1, 1953, to August 31, 1955. Under terms of this lease, 50 per cent of the net smelter returns from ore shipped was to be paid to appellant and 50 per cent to respondent. Respondent was to furnish appellant compressed air and power, and was to mill all ores produced. In addition, appellant was given the right to use certain mining machinery owned by respondent. Negotiations for this lease were carried out by appellant with C. C. Dunkle, vice president and manager of respondent's mining operations, who was also one of its directors.

In early February, 1955, appellant desired to do some prospecting by way of diamond drilling on the leased property. Before beginning this work, however, it was necessary that he be granted an extension of his present lease which was to expire August 31, 1955. Accordingly, appellant wrote Dunkle on February 16, 1955, sending a copy of the letter to H. J. Hull, president of respondent and a member of its board of directors, stating such reasons for desiring an extension of the

lease. Appellant noted in this letter he had sufficient ore then developed to last until termination of the lease under which he was presently operating.

Hull answered appellant's letter on February 18, 1955, informing appellant that when Dunkle returned to Wallace, appellant's request would receive the attention of the directors.

On March 19, 1955, appellant and Dunkle met and discussed the matter of the lease extension. As a result of this discussion, appellant wrote Dunkle on March 21, 1955, sending a copy of the letter to Hull, setting out what apparently was the extent of agreement reached between the two men on March 19. Among other things, appellant was to have his present lease extended until September 1, 1957, with option for renewal, and the lease was to be modified so as to give appellant the right to supervise milling operations and technique. The royalty to be paid respondent was to be 15 per cent of net smelter returns, and certain designated paragraphs relating to the furnishing to appellant of compressed air and power, and maintenance of facilities, were to be deleted. It should be noted the deletion of the paragraph relative to the furnishing to appellant of compressed air and power by respondent was necessary since Dunkle had informed appellant during the course of their discussions that respondent intended to commence sinking operations on a portion of its property not under lease, and that it would not be able to perform this work and still supply compressed air to appellant. Because of this, appellant stated in the letter he hoped to have an airline completed from Sidney Mining Company in 30 days, and thought this would be a good time for the changes in the lease to become effective. Through subsequent correspondence between the parties, respondent was kept informed as to the state of completion of the airline.

A meeting of the directors of respondent corporation was held April 28, 1955, at which time appellant's letter of March 21 was considered. The minutes of this meeting revealed Hull was instructed to advise appellant of the changes in the lease to which respondent would agree. Among those changes material here · was that the term of the lease would be for one year, but the right of renewal from year to year would be granted as long as relations between the parties remained satisfactory. Further, respondent was to mill all of appellant's ore for a designated charge, and appellant would pay a royalty of 15 per cent of net smelter returns on all ore mined from the property covered by the lease. By order of the board, Dunkle was to discuss any unsettled items with appellant.

Results of this meeting were conveyed to appellant by Hull May 3, 1955, in accordance with the order of the board.

Mention was made in this letter that appellant was to mill all ores at respondent's mill, and respondent was to have full supervision and control of milling operations. This letter concluded by stating when appellant and Dunkle were in agreement on all points, he, Hull, would suggest a new lease to be drawn to supplant the old agreement. Appellant answered this letter May 7, 1955, stating: "We both understand that the lessee [appellant] is to have the right to mill elsewhere at his option." The words "we both" apparently applied to appellant and Dunkle, as mention was made in the letter that they had talked the matter over that same morning. Some protest was made concerning the terms of the lease being for one year; however, appellant mentioned Dunkle had assured him he could have the lease as long as he desired and the rest of the directors felt the same. In closing, appellant stated the airline would be completed from Sidney on May 15, and he would begin taking air through such line June 1. Appellant noted if respondent was desirous of commencing sinking operations immediately, he could begin taking air from Sidney May 15.

Hull responded to this letter May 9, 1955, when he wrote stating he, Hull, had neglected to mention appellant was to have the option under the new agreement to mill elsewhere; however, he hoped mill results and costs would prove satisfactory so respondent could continue to do appellant's milling. Hull concluded by stating June 1 would be sufficient time to begin taking air from Sidney, as arrangements for respondent's sinking operations had not been completed.

Thereafter, Hull wrote appellant on June 13, 1955, that he and Dunkle had reviewed the correspondence and conversations between the parties and felt they were in agreement on the major items, except he now felt respondent must do all of appellant's milling, contrary to what he had written appellant May 9.

On August 2, 1955, appellant wrote Hull that he had expected a certain amount of give and take on the final terms of the lease, but those terms as stated by Hull were so far divergent from his verbal agreement with Dunkle that he could not accept them. Further, he wrote, if respondent would reimburse appellant for the expense of installation of the airline, he would in effect forget the entire matter. This was followed by another letter from appellant to Hull written September 19, 1955, wherein appellant stated he was giving up all further work on respondent's property, and since the new lease had never been consummated, he believed it to be Hull's option to refigure the settlement for concentrates shipped on the original lease on the 50-50 basis, and respondent would have to pay for tramming of ore and trucking to the mill in addition to pay-

ing for the Sidney air rental from June 1, and for the cost of installation of the airline.

Upon his return from a three-weeks trip to New York, Hull answered on October 7, 1955, explaining the settlement for concentrates was to be figured under terms of the new lease in accordance with his letter of May 3, and further that respondent would not stand the cost of the Sidney airline. It should be noted the parties figured ore settlements during the summer of 1955 on the basis of the new agreement, that is to say, 15 per cent of the net smelter returns was paid to respondent.

The complaint in this action seeks recovery in the amount of $1,492.36 allegedly expended by appellant in the construction of the Sidney airline in reliance upon representations made to appellant by agents and officers (Dunkle and Hull) of respondent, relative to the granting of the lease extension. The answer filed by respondent denies the material allegations of the complaint and sets up as an additional defense the fact a strike of mill workers occurred August 16, 1955, and this strike was the dominant reason appellant had terminated whatever agreement the parties had. The answer is joined with a cross-complaint wherein respondent seeks the sum of $1,500 damages because a large amount of ore allegedly left by appellant at the termination of his operations was blocking and obstructing the use of a passageway on respondent's property. By leave of the court, an amendment to the cross-complaint was allowed wherein it was alleged appellant had damaged certain portions of respondent's property in the additional sum of $1,500.

The case was tried before the court sitting without a jury. At the conclusion of the testimony and after submission of written briefs by both parties, judgment was entered ordering appellant take nothing by his complaint, respondent take nothing by its cross-complaint and each party pay his or its own costs.

Appellant appeals from the judgment and from an order denying a motion for new trial, listing six specific assignments of error, five of which question the sufficiency of the evidence, whereas the sixth assignment is one of law relative to the refusal of the court to allow the admission into evidence of a certain letter allegedly written by appellant and sent to Hull.

In his first assignment of error, appellant challenges the sufficiency of the evidence upon which the court found respondent did not permit Dunkle or any other person to act for it so as to lead appellant to believe such person had authority to bind respondent corporation. Appellant seeks to overturn this finding because two prior leases between the parties were negotiated with Dunkle, and because of the testimony of the witness Asher to the effect

he too had leased mining properties from respondent through negotiations carried on with Dunkle.

■ In considering any assignment of error predicated upon the insufficiency of the evidence, we must be mindful of the general rule of law so often quoted by this Court that where the findings of the trier of facts are supported by substantial and competent, although conflicting, evidence, they will not be disturbed on appeal. Howay v. Howay, 74 Idaho 492, 264 P.2d 691; Jensen Motor Sales v. Chandler, 77 Idaho 303, 291 P.2d 1116; Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946; Ryan v. Day, 74 Idaho 159, 258 P.2d 1146; In re Davenport's Estates, 79 Idaho 548, 323 P.2d 611; Manley v. MacFarland, 80 Idaho 312, 327 P.2d 758; Holders Manufacturers, Inc. v. Cudd, 80 Idaho 557, 335 P.2d 890.

■ The record reveals appellant was informed by Hull February 18, 1955, that his request for an extension of the lease then in effect would receive the attention of respondent's directors when Dunkle returned to Wallace. In addition, the transcript discloses appellant was orally informed by Dunkle during one of their discussions that final approval of any extension would be up to the board. Hence, appellant was put on notice board action would be necessary before any lease extension could become effective.

Hull's letter of May 3, addressed to appellant, conveyed the changes and modifications in the lease to which respondent's directors had agreed at a meeting held April 28, 1955. Upon receipt of this letter, appellant protested to Hull relative to the exclusion of the option to mill ore elsewhere which had previously been agreed upon between appellant and Dunkle. Hull immediately answered this protest May 9, stating: "In my letter of May 3rd, I neglected to say that you have the option to mill elsewhere, but I hope that mill results and costs will prove satisfactory to you so that Nabob may continue to do your milling." It is to be noted the context of this letter is an extension of remarks contained in Hull's previous letter of May 3. Inasmuch as Hull was vested with board authorization to write the letter of May 3, setting forth the proposed changes of appellant to which respondent would agree, and had made such authorization known to appellant; Hull further amplified the board authorization in his letter of May 9, when he said appellant "could mill elsewhere at his option." Hull, on behalf of the corporation, had actual authority to grant the option and conveyed that information to appellant.

An agreement between the parties had been entered into, and the trial court erred in reaching a contrary determination.

Appellant's second assignment of error questions the finding of the trial court to the effect appellant's operations on respondent's property were shut down by a strike of mill workers occurring August 16, 1955. In support of his position, appellant contends his reason for discontinuance of operations was that respondent would not execute the lease offered him through negotiations with Dunkle and Hull, and not because of the occurrence of the strike.

Evidence discloses in addition to oral protests relative to withdrawal of the option to mill elsewhere, appellant wrote Hull August 2, 1955, stating a divergence of opinion had arisen between them concerning what appellant and Dunkle had agreed; further, if respondent would reimburse him for the cost of installation of the Sidney airline, he would "call it quits." At no point in this letter did appellant imply he was in fact giving up the lease. Hence the first actual notification of appellant's intention to give up whatever agreement the parties had was not received by respondent until after the strike of mill workers had begun. However, in concluding an agreement between the parties had been reached, and this agreement was binding on respondent, it is not material to a determination of this case whether appellant discontinued operations because of the strike of mill workers or of his own volition. This is true inasmuch as Hull's notice to appellant on June 13, 1955, to the effect the option to mill ore elsewhere was being withdrawn, was a material breach of the contract which would justify a refusal by appellant to proceed further. However, mere efforts on the part of the innocent party to persuade the promisor who repudiates his agreement to reject the repudiation and proceed with the performance of his agreement, when the efforts finally prove unsuccessful, do not involve a waiver of the innocent party's right to avail of the breach. Napier v. People's Stores Co., 98 Conn. 414, 120 A. 295, 33 A.L.R. 499; Canda v. Wick, 100 N.Y. 127, 2 N.E. 381; Haddaway v. Smith, Tex.Civ.App., 277 S.W. 728; Louisville Packing Co. v. Crain, 141 Ky. 379, 132 S.W. 575; Bologh v. Roof Maintenance Company, Sup., 112 N.Y.S. 1104; 3 Elliott on Contracts, p. 238. Therefore, appellant's failure to declare an earlier notice of his intentions did not waive his right to maintain this action, especially where, as here, there is no evidence which would lead us to believe respondent had altered or changed its position by appellant's failure to declare an earlier termination. Whether appellant's operations were closed by strike, as respondent insists, is wholly immaterial in light of the views expressed above.

As his third assignment of error, appellant contends the finding of the court

**128**

to the effect he did not build the airline in reliance upon assurances given him by Dunkle acting for respondent corporation was incorrect as not being supported by the evidence. The airline was built in anticipation of a new lease in accordance with the suggestion of respondent's officers. Expenses incurred by a party in anticipation of or preparation for performance of a contract may be recovered as damages in an action for a breach thereof. 25 C.J.S. Damages § 46, pp. 524–525; Webster v. Beau, 77 Wash. 444, 137 P. 1013, 51 L.R.A.,N.S., 81; Lloyd v. American Can Co., 128 Wash. 298, 222 P. 876; Platts v. Arney, 50 Wash.2d 42, 309 P.2d 372. See also United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168. Expenses incurred by the appellant in the installation of the airline fall within this rule and are recoverable in the present instance.

We deem it unnecessary to discuss the remainder of appellant's assignments of error.

Inasmuch as the court found appellant had expended $1,492.36 in construction of the airline, it is not necessary that the case be reopened to hear evidence in this regard.

The cause is reversed with directions to enter judgment in favor of appellant in the sum of $1,492.36.

Costs to appellant.

TAYLOR, C. J., and SMITH and KNUDSON, JJ., concur.

PORTER, C. J., sat at the hearing, but did not participate in the decision.