662 P.2d 1163

**Michael SCOTT, Plaintiff-Appellant,**

**v.**

**George C. CASTLE; Sawtooth Title Company, Inc., an Idaho corporation, Defendants-Respondents.**

**No. 14167.**

Court of Appeals of Idaho.

April 26, 1983.

Rand L. Peebles, Lawson & Peebles, Ketchum, for plaintiff-appellant.

E. Lee Schlender, Ketchum, for defendants-respondents.

WALTERS, Chief Judge.

Michael Scott appeals from an order of the district court, granted after a trial, denying him preliminary and permanent injunctions against a trustee's sale under a deed of trust, denying his requests for an accounting and for declaratory relief, and ordering a hearing on damage claims made by each party against the other.[1] He contends the court erred in entering the order, for the following reasons. First, Scott argues that he was not obligated to make the payments required by a contract for the purchase of real property and promissory note either (a) because George Castle, the seller, had breached his obligation to assist Scott in complying with a county subdivi-

sion ordinance; (b) because Scott and Castle modified the terms of payment by oral agreement and by their conduct; or (c) because Castle waived his right to demand strict performance of the payment provision by his conduct and is therefore estopped to pursue his remedy of trustee's sale under the deed of trust which secured the note. Second, Scott contends that the trustee's sale should not be permitted to go forward because Scott would suffer irreparable injury for which he could not be adequately compensated with money damages. Finally, Scott argues that the court erred in finding that he had no agreement with Castle to exchange an additional ten acres of Castle's property for property to be selected by Castle and purchased by Scott. Additionally, the respondent Castle has requested an award for reasonable attorney fees for representation on this appeal. We affirm and award attorney fees to the respondent.

On November 3, 1978, Scott entered into an agreement to purchase from Castle twenty acres of real property located in Blaine County. Castle was aware that Scott intended to subdivide the property and to sell the lots at a profit. In addition to the contract, Scott signed a promissory note secured by a deed of trust on the property sold by the contract. Both the contract and the note provided that Scott would make five annual payments of equal amounts. There were no contractual provisions imposing conditions on the payments. The dates of payment varied between the contract and the note but the parties did not dispute that the first payment, of more than $35,000, was due on February 17, 1980. This payment was not made. In January, 1980, Scott had learned that dividing Castle's property, by sale of part of it to Scott, did not comply with an applicable county subdivision ordinance. He then informed Castle that he would not make any payments to Castle until the requirements of

---

1. This matter was certified for appeal under Rule 12(b), I.A.R. by order of our Supreme Court, thereby abating the hearing on damages, pending determination of this appeal.

the ordinance were satisfied and the property could be developed. Castle's only response was to inquire as to the length of time which would be required to achieve compliance. However, a $5000 payment was made by Scott to Castle in April, 1980. No further payment was made.

It is not disputed that dividing Castle's property created a subdivision which failed to comply with the controlling Blaine County ordinance. The evidence showed that Scott had two procedures available, by which he could have achieved compliance with the ordinance. He could have used a general platting procedure, for subdivision of land into five or more lots, or he could have employed a modified "short-plat" procedure for subdivision of land into no more than four lots—followed by a general plat later. Because the original division of Castle's land, by the sale to Scott, had not conformed to the subdivision ordinance, Castle's participation in a plat application was required under either of these alternatives.

The trial court found that Scott never presented a short-plat application to Castle for his signature because the short-plat procedure was a time consuming, two-step procedure. Scott testified that, if the short-plat procedure had been used, he would have had to petition to vacate the plat approved in the first step insofar as it applied to his property and then seek approval of a second plat showing a further subdivision of his property into about eighteen lots.

Scott did attempt to employ the general platting procedure; but his plat proposals went beyond the twenty acres he had purchased from Castle under the contract. Scott had expressed interest in purchasing an additional ten acres of land adjacent to his first purchase, and he included such additional land in the plats on which he tried to get Castle's participation. However, the two parties never reached agreement on precisely which ten acres Scott would acquire. Scott was unable to secure Castle's participation in plat applications which included land that Scott did not own and parts of which Castle did not want to sell. Scott did not undertake to plat the twenty acres, by themselves. Consequently, the property remained out of compliance with the county ordinance.

As mentioned, at approximately the same time that the initial contract was signed, Scott expressed interest in acquiring another ten acre parcel adjacent to the first parcel he had purchased. For tax reasons, Castle preferred an exchange of property rather than an outright sale. The record indicates that Castle was to identify properties which Castle might be interested in acquiring by exchange. A proposed "exchange agreement" was prepared and, at Castle's suggestion, Scott purchased certain real property in California to be used if an exchange did occur. However, the trial court found that the proposed agreement was not finalized because the parties failed to reach a meeting of the minds as to which ten acres Castle was to exchange. It appears that Scott later conveyed the California property to a third party.

## I. SCOTT'S OBLIGATION TO MAKE PAYMENTS

Scott contends that he was not obligated to make the payments called for in the promissory note. He makes this contention on three theories.

### A. Implied Covenant of Fair Dealing

First, Scott claims that the contract in question was subject to an implied covenant of good faith and fair dealing, which required that neither party should do anything which would have the effect of destroying or injuring the right of the other party to receive the "fruits of the contract." According to Scott, the parties to this contract intended that Scott would subdivide the property acquired from Castle. Scott implicitly argues that this intention necessarily included bringing the first subdivision, occasioned by dividing Castle's proper-

ty, into compliance with the subdivision ordinance. Therefore, Scott argues, Castle breached an implied covenant by refusing to cooperate with Scott in executing a plat to subdivide the entire original parcel owned by Castle. Scott urges that Castle's breach of the implied covenant excused Scott's failure of performance in making the required contract payments.

Scott cites *Bleecher v. Conte,* 29 Cal.3d 345, 173 Cal.Rptr. 278, 626 P.2d 1051 (Cal. 1981), and *Bastian v. Cedar Hills Investment and Land Co.,* 632 P.2d 818 (Utah 1981) in support of his implied covenant theory. We have been cited no Idaho authority which specifically implies a covenant of good faith and fair dealing in real estate contracts. *Compare* I.C. § 28–1–203 (relating to contracts governed by the Uniform Commercial Code). However, in *Commercial Insurance Co. v. Hartwell Excavating Co.,* 89 Idaho 531, 541, 407 P.2d 312, 317 (1965), our Supreme Court observed: "It is well settled that a contract includes not only what is stated expressly but also that which *of necessity* is implied from its *language* [emphasis added]". *Accord, Pern v. Stocks,* 93 Idaho 866, 477 P.2d 108 (1970).

In *Bleecher,* buyers of real property sued for specific performance of their contract when the seller refused to proceed with the agreement. The buyers' obligation to purchase was conditioned explicitly on the buyers' approval of a tract map and on their obtaining city approval for development, though they promised in writing to do everything in their power to expedite the required approval and proceed with diligence. On these facts, the seller argued there was no mutuality of obligation and that the contract was therefore unenforceable. The court decided that the implied covenant of good faith and fair dealing imposed an enforceable good faith obligation on the buyers to proceed diligently. On this basis, the court held there was mutuality of obligation. Here, Scott would have us impose on Castle duties not contracted for, rather than qualify Castle's

contractual duties with an obligation to act in good faith.

In *Bastian,* the buyer entered into a contract to purchase land for the purpose of development. Payment under the contract was explicitly contingent on several events, including the provision of a sufficient culinary water supply and availability of a sewer lagoon system. However, the contract did not state who was responsible to fulfill these conditions. The conditions did not occur and no payment was made beyond the payment of earnest money. The Utah Supreme Court affirmed a judgment ordering return of the earnest money to the buyer and cancellation of the sale, holding that the seller was not solely liable for the failure of the conditions to occur, because the seller was not responsible for them. The court also rejected the seller's contention that the earnest money should be forfeited to the seller, noting that although such would normally be the case and the seller was not contractually responsible for fulfillment of the conditions, the seller was legally bound not to frustrate the fulfillment of those conditions. Because of the seller's ownership of water rights and sewage lagoons and its relationship with city authorities from whom approval would be required, the court determined that the seller was at least partly responsible for the nonoccurrence of the events. Here, in contrast, there were no conditions to payments under the contract. Castle had no responsibility to initiate the platting process so Scott could develop the property he had acquired. At most, Castle had a responsibility to cooperate in the platting process if a proper application were prepared by Scott.

■ Assuming, though not deciding, that we should imply a covenant of good faith and fair dealing—and that neither party should do anything which would destroy or injure the right of the other party to receive the fruits of the contract—Scott cannot prevail upon such a covenant. The trial court determined that the language of the

contract did not obligate Castle to provide Scott with a subdivision plan, and that payment under the contract was not subject to a condition precedent which required that the parcel be subdivided in a manner desired by Scott. Upon our reading of the contract, as it appears in the record, we agree. Moreover, the court further determined that Castle had not, in fact, refused to cooperate; rather, Castle had resisted only Scott's efforts to plat land which was outside the scope of the contract. These findings are based upon substantial and competent evidence and will not be disturbed on appeal. *Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979).

## B. Modification of the Contract

Scott next argues that his payment obligation was excused because, by oral agreement and by their conduct, the parties modified the written terms of the contract. Castle's failure to demand timely payment is asserted as conduct evidencing this modification.

■■■ It is well settled in Idaho that parties to a written contract may modify its terms by subsequent oral agreement or may contract further with respect to its subject matter. *Silver Syndicate, Inc. v. Sunshine Mining Co.,* 101 Idaho 226, 611 P.2d 1011 (1979); *Olson v. Quality-Pak Co.,* 93 Idaho 607, 469 P.2d 45 (1970); *Belts v. State,* 86 Idaho 544, 388 P.2d 982 (1964). However,

> ... one party to a contract cannot alter its terms without the assent of the other and the minds of the parties must meet as to any proposed modification. The fact of agreement may be implied from a course of conduct in accordance with its existence and assent may be implied from the acts of one party in accordance with the terms of the change proposed by the other.

*Ore-Ida Potato Products, Inc. v. Larsen,* 83 Idaho 290, 296, 362 P.2d 384, 387 (1961). *See also Resource Engineering, Inc. v. Siler,* 94 Idaho 935, 500 P.2d 836 (1972). The party asserting an oral modification of a written contract has the burden of proving the modification by clear and convincing evidence. *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982).

■■■ The trial court found that Scott had no right to withhold or defer payment and that there were no oral agreements or understandings to defer payment. Our examination of the record reveals no proof that Castle consented to Scott's withholding of payment until the subdivision of Castle's property had been brought into compliance with the county subdivision ordinance. There is some evidence that Castle acquiesced in a delay of payment. However, Castle testified that he never told Scott that he did not plan to collect his money until the subdivision problem was resolved. Moreover, Castle testified that in return for allowance of late payments Scott promised to provide additional security by assigning another promissory note which Scott held. However, Scott did not assign him the note or pay him the proceeds. Some ten months after the first payment was due under the land sale contract—and while the subdivision problem was still unresolved—Castle made a demand for payment. We conclude that there is substantial and competent evidence to support the court's finding that Scott's payment obligation was not modified by an oral agreement or by the parties' conduct. *Cougar Bay Co., Inc. v. Bristol, supra.* We have reviewed the cases cited by Scott in support of a contrary conclusion and find them factually distinguishable.

## C. Waiver and Estoppel

Scott claims that Castle waived his right to demand strict performance of the contract and is estopped to pursue foreclosure of the deed of trust. This issue is largely coextensive with the contentions discussed above—that the trial court erred in finding that Scott had no right to defer payment, and that Castle did not frustrate the intent of the real estate purchase by refusing to cooperate in the execution of a plat application.

■ Waiver is a voluntary, intentional relinquishment of a known right or advantage. The party asserting the waiver must show that he has acted in reliance upon such a waiver and reasonably altered his position to his detriment. *Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981). The record indicates that Castle did not move immediately to foreclose on the deed of trust when Scott failed to make his payments. Castle gave Scott ample time to develop a subdivision plat for the twenty acres sold under the contract. He did not at any time make any statements concerning the overdue payment—he neither demanded nor forgave that payment. However, the record indicates Scott made offers to satisfy his obligation by assignment of a note, and payment to an escrow account.

■ Upon this record, the trial court found no waiver. We agree. In our view, Castle's conduct does not demonstrate a voluntary, intentional relinquishment of a known right, but rather shows the allowance of a substantial grace period during which Scott had ample time to develop the property to his satisfaction, to obtain an approved subdivision plat and then cure his default in payments. *See French v. Nabob Silver-Lead Company,* 82 Idaho 120, 350 P.2d 206 (1960) (delay of action on breach of contract is not a waiver.) Also, the record does not support Scott's claim of reliance upon the asserted waiver. The only action disclosed by the record which might be construed as reliance on the waiver is Scott's continued failure to make the contract payment which was due. Castle's testimony that Scott promised to assign to him a note receivable, or its proceeds, conflicts with Scott's claimed reliance on a waiver. Substantial and competent though conflicting evidence supports the trial court's findings that no waiver occurred. *Cougar Bay Co., supra.*

We have reviewed the cases cited by Scott in support of his waiver theory. None of them support the proposition that a vendor who merely has acquiesced for a time in the failure of a purchaser to perform under a contract for sale of real property thereby waives his right to declare the agreement terminated.

■■ Scott also urges that we apply the doctrine of equitable estoppel. Equitable estoppel arises where a party makes a false representation or concealment of a material fact with actual or constructive knowledge of the truth; the false representation or concealment is made with the intent that it be relied upon; the party asserting estoppel does not know or could not discover the truth; and the party asserting estoppel has relied and acted upon the representation or concealment to his prejudice. *Twin Falls Clinic and Hospital Building Corp. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); *Tommerup v. Albertsons, Inc.,* 101 Idaho 1, 607 P.2d 1055 (1980). The issue raised here is whether estoppel is demonstrated by the facts or circumstances surrounding the late payment. The trial court found that there were no fraudulent misrepresentations, or misrepresentations of any kind, made by Castle. There is substantial and competent evidence to support this finding.

■ Scott would also have us apply the doctrine of promissory estoppel. He cites *Smith v. Boise Kenworth Sales, Inc.,* 102 Idaho 63, 625 P.2d 417 (1981). Promissory estoppel is described therein as:

> A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise. RESTATEMENT (SECOND) OF CONTRACTS § 90(1) (1973).

*Smith v. Boise Kenworth,* 102 Idaho at 67, 625 P.2d 417. Here the trial court did not find and the record does not show any such statement that could be construed as a promise. Moreover, even where such a promise is made, it is merely a substitute for consideration to make an agreement but

is not a substitute for the agreement itself. *Smith v. Boise Kenworth Sales, Inc., supra.* The trial court found that there was no agreement to defer payments and we have upheld that finding. We conclude that Scott is not entitled to relief on the theory of promissory estoppel.

## II. THE REAL ESTATE EXCHANGE AGREEMENT

Scott also argues that Castle is under an obligation to convey an additional ten acres to Scott in exchange for the California property which Scott purchased. He urges that the decision of the trial court to the contrary is unsupported by the evidence. It is clear that Scott did, in fact, purchase the California property in preparation for an exchange with Castle. It is also undisputed that Castle brought the property to Scott's attention.

However, the issue is whether the asserted exchange agreement was enforceable under the statute of frauds. Scott concedes that an agreement for the sale of real property must be in writing and subscribed to by the party to be charged. I.C. § 9–505(5). In *Hoffman v. SV Company, Inc.,* 102 Idaho 187, 628 P.2d 218 (1981), the Idaho Supreme Court set out the requirements of a written memorandum of an oral agreement for the sale of real property which would be sufficient to render that agreement enforceable. The writing must state the parties to the contract, the subject matter, the price or consideration, a description of the property and the essential terms and conditions of the agreement. Furthermore, an unsigned writing containing terms of the agreement will be considered part of the memorandum only where express reference to it is made in the signed writing.

Scott contends that the last plat which he proposed sufficiently identified the ten acres in question so as to comply with I.C. § 9–505(5) and the *Hoffman* requirements. However, that plat was not signed by both parties and the signed exchange agreement did not expressly refer to it. Therefore, the plat cannot be used to provide the required legal description and the exchange agreement fails for lack of a sufficient legal description. In any event, as noted earlier, the record indicates that Scott conveyed his interest in the California property to a third party in December, 1980. There was no proof at trial that Scott would have been able to perform the exchange even if the agreement had been enforceable.

## III. DENIAL OF INJUNCTIVE RELIEF

Finally, Scott contests the refusal of the trial court to issue a permanent injunction against the trustee's sale under the deed of trust on the twenty acres. The court previously had issued a preliminary injunction. After hearing the issues on the merits, the court ruled against Scott and refused to permanently enjoin the sale. The court held that Scott had no right to any of the twenty acres which would be entitled to protection by injunction. The court noted that if Scott could demonstrate he had suffered any damage because of the trustee's sale, he had a remedy at law for recovery, which would be determined at a subsequent hearing. Because Scott is in default and the trial court held against him on all theories he asserted to excuse the default, there is no basis to enjoin the sale. We affirm the refusal of the trial court to enter a permanent injunction.

## IV. ATTORNEY FEES ON APPEAL.

Castle requests an award of attorney fees on this appeal, as prevailing party. I.C. § 12–121, I.A.R. 41. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979) authorizes an award of reasonable attorney fees where an appeal is brought, pursued or defended frivolously, unreasonably or without foundation.

In this appeal, Scott has not been able to point to any findings of fact which were clearly, or even arguably, unsupported by substantial and competent evidence. On some points the evidence was conflicting but it is not our function to second-guess a trial court on conflicting evidence. *See T-Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct.App.1982). Moreover, we have not been asked to establish any new legal standards, nor to modify or clarify any existing standards. Rather, the nar-

row focus of this appeal has been the application of settled law to the facts. There was no showing that the trial court misapplied the law. *Compare Christensen v. Idaho Land Developers, Inc.,* 104 Idaho 458, 660 P.2d 70 (Ct.App. March 8, 1983). In our view, this appeal was brought and pursued unreasonably and without foundation. Accordingly, we award attorney fees on appeal to Castle, in an amount to be determined as provided in I.A.R. 41(d).

The order of the district court is affirmed. Costs and attorney fees on appeal to respondent, Castle.

SWANSTROM and BURNETT, JJ., concur.