728 P.2d 769

**WORLD WIDE LEASE, INC., a Washington corporation,**
Plaintiff-Counter-Defendant-Appellant,

v.

**Brent WOODWORTH, Ralph Woodworth and Ina Woodworth, husband and wife, Defendants - Counter - Claimants - Cross Claimants-Respondents.**

No. 14722.

Court of Appeals of Idaho.

Sept. 26, 1986.

Rehearing Denied Nov. 19, 1986.
Petition for Review Denied
Feb. 25, 1987.

---

1. I.C. § 6–906 was amended in 1985 extending the limitation period to 180 days.

John C. Hohnhorst of Hepworth, Nungester & Felton, Twin Falls, for plaintiff-counter-defendant-appellant.

W. Marcus W. Nye of Racine, Olson, Nye & Cooper, Pocatello, for defendants-counter-claimants-cross claimants-respondents.

## ON PETITION FOR REHEARING

This opinion supersedes our opinion issued February 28, 1986, which is hereby withdrawn.

SWANSTROM, Judge.

World Wide Lease, Inc., a Washington corporation engaged in the business of leasing commercial equipment, appeals from a judgment entered upon a directed verdict in favor of Brent Woodworth and his parents, Ralph and Ina Woodworth. World Wide brought suit against the Woodworths and their co-defendant, Kechter Brothers, a now defunct Idaho corporation, for breach of a lease and of a subsequent compromise agreement. Following a jury trial, the district court allowed the Woodworths to amend their pleadings to allege, as an affirmative defense, failure of consideration in the lease. The court then granted the Woodworths a directed verdict based on that defense.

World Wide makes four contentions on appeal: (1) The district court abused its discretion and committed legal error when it permitted the Woodworths to amend their pleadings to allege failure of consideration as an affirmative defense. (2) The court erred in granting the Woodworths' motion for a directed verdict based upon an alleged failure of consideration. (3) The court erred in admitting certain testimony concerning an issue of agency. (4) The court erred in failing to grant World Wide's motions for directed verdict and for judgment notwithstanding the verdict (n.o.v.). We reverse the court's directed verdict

based upon failure of consideration, but affirm the denial of World Wide's motions for directed verdict and judgment n.o.v. Our disposition of the case does not require us to address the amendment of the pleadings. We also need not address the evidentiary question involving agency because we must remand for a new trial.

In early 1977, Brent Woodworth undertook a project to reclaim arid land on his farm near Rockland, Idaho. He contacted Kechter Brothers to purchase irrigation equipment, but when financing proved to be a problem Woodworth was directed to Brent Van Elfin, a lease broker. After several negotiations, Van Elfin arranged a deal acceptable to all parties: World Wide Lease would purchase the irrigation equipment from Kechter Brothers for $134,-109.60 and then would lease the equipment to Woodworth. Woodworth would make semi-annual lease payments of $13,165.41 for ten years. Brent Woodworth's parents, Ralph and Ina Woodworth, would sign as guarantors of the lease.

Prior to the negotiations, Woodworth had begun drilling wells, expecting to discover an adequate supply of water for the proposed irrigation system. At the time the lease documents were signed by Woodworth on April 15, 1977, he had yet to find a sufficient supply of water. Woodworth instructed Van Elfin to hold the executed "Equipment Acceptance Notice" and Woodworth's $13,165.41 initial payment until Woodworth notified Van Elfin that sufficient water had been discovered. In an effort to meet the lease's payment schedule, Woodworth entered into a collateral agreement with Kechter Brothers on June 21, 1977, wherein Kechter Brothers agreed to pay Woodworth's lease payments until sufficient water was found. This agreement is set forth below.[1] Upon entering

---

1. 1. This agreement pertains to the Irrigation Equipment purchased by Brent and Ralph Woodworth, Rockland, Idaho from Kechter Brothers Inc., American Falls, Idaho, and financed through World Wide Leasing, Lynnwood, Washington.

1. Total price of the Equipment purchased and financed through World Wide Leasing $134,109.60.
2. Kechter Brothers Inc. will make the first and second payment of $13,165.41 each to World Wide Leasing.

into the collateral agreement, Woodworth instructed Van Elfin to forward the remaining documents to World Wide. World Wide then accepted the lease on June 24, 1977, and purchased the irrigation equipment from Kechter Brothers.

Unfortunately, Woodworth's wells never produced enough water. Pursuant to its agreement with Woodworth, Kechter Brothers paid Woodworth's semi-annual lease payments to World Wide for the first two years of the lease; however, several of the payments were quite late. When the third payment due in June 1978 was not timely made, World Wide's attorney notified Woodworth of the delinquency and demanded immediate payment. Woodworth replied that Kechter Brothers was responsible for the payment and forwarded a copy of the 1977 agreement that Woodworth and Kechter Brothers had executed. Although late, Kechter Brothers did pay the third and fourth installments. When the fifth installment due June 25, 1979, was late, Woodworth again referred the lease company to Kechter Brothers for payment. After discussions with Woodworth and Kechter Brothers, World Wide directed its attorney to draft a "compromise agreement" to resolve the situation. Kechter Brothers agreed to repossess the equipment from Woodworth and to repurchase the equipment from World Wide for $134,000. Upon Kechter Brothers' full performance, Woodworth would be relieved from the lease. All the parties signed the agreement, including Ralph and Ina Woodworth. Kechter Brothers was to make six monthly

interest payments and then one payment of $134,000 in February 1980 to World Wide. The compromise also contained a provision that in the event Kechter Brothers defaulted, World Wide and Woodworth would be returned to their respective positions as if the compromise "had not been entered into."[2] Kechter Brothers took the equipment off Woodworth's property and sold most of it to other individuals. Kechter Brothers paid the first five interest installments but did not pay World Wide the last interest installment nor the $134,000.

World Wide sued the Woodworths for breach of the lease and sought authorization to foreclose on real property which secured the lease. World Wide also sued Kechter Brothers for breach of the compromise agreement. The Woodworths answered, raising certain defenses to the enforceability of the lease. They also cross-claimed against Kechter Brothers for indemnification and contribution. During trial, the district court granted summary judgment to World Wide against Kechter Brothers on the issue of liability under the compromise agreement and granted summary judgment to the Woodworths against Kechter Brothers for indemnification. After the parties rested, the court permitted the Woodworths to amend their answer to include the defenses of (1) failure of a condition precedent that there be an adequate water supply and (2) failure of consideration. The Woodworths then moved for a directed verdict against World Wide's claim on the original lease on the grounds that there had been a failure of considera-

3. In the event the wells now being drilled on the Woodworth property do not produce an adequate amount of water to irrigate the land under the Irrigation system by Sept. 15, 1977, Kechter Brothers Inc. will assume the responsibility for the remaining balanced owed to World Wide Leasing and remove the Irrigation Equipment from the Woodworth property.

> KECHTER BROTHERS INC.
> By /s/Michael Kechter
> Michael Kechter
> /s/Brent Woodworth
> Brent Woodworth

2. Paragraph V of the compromise agreement provided:

In the event KECHTER breaches any of the terms and conditions of this agreement, then and in such event WORLD WIDE shall have all of its rights and remedies against WOODWORTH as if this agreement had not been entered into, WOODWORTH shall have the right to assert any and all defenses it may have against WORLD WIDE as if this agreement had not been entered into, and both WORLD WIDE and WOODWORTH shall have all rights that they may have against KECHTER as if this agreement had not been entered into, and in addition, thereto, WORLD WIDE and WOODWORTH will have all rights against KECHTER under the terms of this agreement.

tion. World Wide countered and requested a directed verdict holding the Woodworths liable to the company under the lease. The court granted the Woodworths' motion and dismissed World Wide's complaint against them.[3] The district court granted directed verdicts to the Woodworths on their cross-claim against Kechter Brothers and to World Wide on its suit against Kechter Brothers.

The court granted the Woodworths a directed verdict against World Wide on the narrow issue that there was a subsequent failure of consideration. The court reasoned that once Kechter Brothers took back World Wide's equipment and sold it, World Wide could not perform its side of the lease with the Woodworths, and thus the Woodworths were no longer obligated to perform their part of the lease. World Wide appealed. Kechter Brothers did not appeal from the judgment of the district court.

## I

World Wide has first asserted that the district court abused its discretion and committed legal error by allowing the Woodworths, at the last minute, to amend their answer so as to plead the affirmative defense of failure of consideration in order to conform the pleadings to the proof. I.R. C.P. 15(b). World Wide also asserts that the court erred in granting the Woodworth's motion for a directed verdict based upon that defense. Because we believe this second issue is dispositive we need not decide nor discuss the alleged procedural error.

The standard which a district court should follow in deciding a motion for a directed verdict is well settled. "A directed verdict should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion." *Thomas Helicopters, Inc. v. San*

*Tan Ranches,* 102 Idaho 567, 569, 633 P.2d 1145, 1147 (1981) (quoting *Shields & Co. v. Green,* 100 Idaho 879, 882, 606 P.2d 983, 986 (1980)). A directed verdict should not be granted against substantial evidence—that is, "evidence ... of sufficient quantity and probative value that reasonable minds could have concluded that a verdict in favor of the non-moving party was proper." *Elce v. State,* 110 Idaho 361, 363, 716 P.2d 505, 507 (1986). However, where the parties argue the application of law to uncontroverted facts, the question should be determined as a matter of law. *See Clearwater Construction & Engineering, Inc. v. Wickes Forest Industries, A Division of The Wickes Corp.,* 108 Idaho 132, 697 P.2d 1146 (1985). Here, the pertinent facts are undisputed. Therefore, we must determine whether these facts disclose that there was a failure of consideration as a matter of law.

▮▮▮ The term "failure of consideration" includes instances where a proper contract was entered into when the agreement was made, but because of supervening events, the promised performance fails, rending the contract unenforceable. *General Insurance Co. of America v. Carnicero Dynasty Corp.,* 545 P.2d 502 (Utah 1976); *Taliaferro v. Davis,* 216 Cal.App.2d 398, 31 Cal.Rptr. 164 (1963); 1 S. WILLISTON, WILLISTON ON CONTRACTS § 119A (W. Jaeger, 3d ed. 1957); 17 C.J.S. *Contracts* § 129 (1963). Failure of consideration generally refers to failure of performance of a contract. *Converse v. Zinke,* 635 P.2d 882 (Colo.1981); RESTATEMENT (SECOND) OF CONTRACTS § 237 comment a (1981) (hereinafter referred to as RESTATEMENT). "Failure" of consideration is to be distinguished from "want" or "lack" of consideration, which refers to instances where no consideration ever existed to support the

---

**3.** Although the district court granted a directed verdict to the Woodworths on World Wide's complaint, the court also dismissed the complaint pursuant to I.R.C.P. 41. We merely note in passing that a Rule 41 motion "is permissible only in cases tried without a jury while a mo-

tion for a directed verdict [Rule 50(a) ] is appropriate only in jury cases." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2530 (1971). Here, the directed verdict made the Rule 41 dismissal superfluous.

contract, rendering the contract invalid from the beginning. *General Insurance Co. of America v. Carnicero Dynasty Corp., supra.*

■ An examination of the lease and the "compromise agreement" is necessary to determine the merits of the parties' arguments. Under the lease, mutual promises to perform served as the consideration. World Wide promised to provide the irrigation equipment, and Woodworth promised to make lease payments. After Woodworth and Kechter Brothers experienced problems in meeting the lease payments, all three parties entered into the compromise agreement. This subsequent agreement discharged Woodworth's duty to pay under the lease *only if* Kechter Brothers performed its future promise to pay World Wide for the equipment. Such a compromise which "provides for the acceptance in the future of a stated performance in satisfaction of the claim ... is an 'executory accord.'" *Johnson v. Utile*, 86 Nev. 593, 472 P.2d 335, 337 (1970). "If, on the other hand, the compromise agreement itself is accepted as a substitution for and extinguishment of the existing claim, then the compromise is a substituted contract." *Id.* Under an executory accord, the original duty is suspended until satisfaction or breach of the accord. If the accord is breached, the injured party may sue either upon the original obligation or upon the compromise agreement. *Wilson v. Bogert*, 81 Idaho 535, 347 P.2d 341 (1959); *W.F. Construction Company, Inc. v. Kalik*, 103 Idaho 713, 652 P.2d 661 (Ct.App.1982). *See also* RESTATEMENT § 281. As indicated in paragraph V of the compromise agreement, *supra* note 2, the parties here intended to revert to their previous positions under the lease. Woodworth and World Wide maintained "all of [their] rights and remedies ... as if this agreement had not been entered into." We conclude that the compromise agreement was an executory accord.

■ World Wide argues that when the parties reverted to their positions under the lease, Woodworth was in default for failure to meet the June 1979 payment. With Woodworth in material breach and the cure period past, the company insists it had a right to repossess the equipment. Consequently, World Wide maintains that there was no failure of consideration on its part because it had no continuing obligation to provide the equipment to Woodworth.

The district court ruled from the bench on Woodworth's motion for a directed verdict. The court stated:

It's clear from the record that *at the time all three parties signed the [compromise agreement], the lease between World Wide and Woodworth was in default,* and at that time World Wide had the opportunity to pursue the remedies contained in the lease against Woodworth. However, instead of doing that they entered into an agreement ... prepared by World Wide's legal counsel and World Wide sold the property contained in the Woodworth lease to Kechter Brothers for $134,000. I am aware of the language in the [compromise agreement] that if Kechter Brothers didn't pay World Wide $134,000, there were certain remedies provided in I believe Paragraph V of [the compromise], basically saying that the parties would go back—they would have the same defenses against each other or the same remedies as if [the compromise] had never been entered into.

However, [the compromise agreement] substantially altered the position of the parties because the property which was leased was sold. Now, if Woodworth were to go back, according to the terms of [the compromise], to the lease and be expected to comply with it, so should World Wide be expected to comply with the lease, but because they sold the property contained in the lease to Kechter Brothers, World Wide would not have been able to perform under the lease either. And the fact that World Wide didn't exercise its option to pursue the remedies at the time [Woodworth] was in default and prior to the signing of [the compromise], in *my opinion they at that*

*time waived the right to pursue this by selling the property to Kechter Brothers.* [Emphasis added.]

Thus, the court acknowledged that Woodworth was in default when the parties negotiated the compromise agreement, but the court held that World Wide "waived" the right to pursue its remedies under the lease. As we mentioned previously, the compromise (*i.e.,* the executory accord) merely suspends the rights and duties under the lease. No one here disputes the fact that the parties reverted to their respective positions under the lease when Kechter Brothers breached the compromise agreement. Under the lease, World Wide could "repossess and remove" the equipment in the event Woodworth defaulted. Given the facts that Woodworth was in default and that the lease permitted World Wide to repossess the equipment, the company was under no legal obligation to redeliver or replace the equipment. Based on the undisputed facts, we hold as a matter of law that there was not a subsequent failure of consideration.[4]

■ Furthermore, we believe the district court erred when it found that World Wide "waived" its rights under the lease. "Waiver is a voluntary, intentional relinquishment of a known right or advantage. The party asserting the waiver must show that he has acted in reliance upon such a waiver and reasonably altered his position to his detriment." *Scott v. Castle,* 104 Idaho 719, 725, 662 P.2d 1163, 1169 (Ct. App.1983); *see also Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981); *Huff v. Rammell,* 108 Idaho 113, 697 P.2d 453 (Ct.App.1985). The compromise agreement does not indicate an intent by either World Wide or Woodworth to relinquish any remedies they possessed under the lease, should they revert to their previous positions. To the contrary, the compromise

agreement clearly reserved both parties' rights and remedies under the lease if Kechter Brothers defaulted. The record indicates that World Wide did not immediately declare Woodworth in default and accelerate the lease, but the parties attempted mutually to resolve the dilemma. The lapse of time between Woodworth's default and the entry of the compromise does not demonstrate relinquishment of World Wide's rights. This time was consumed by the parties negotiating the compromise agreement. Public policy favors the amicable settlement of disputes, and we will not assume that World Wide's conduct demonstrates waiver. *See Lomas & Nettleton Co. v. Tiger Enterprises,* 99 Idaho 539, 585 P.2d 949 (1978). Although Woodworth relinquished possession of the equipment in reliance upon the compromise agreement, releasing the equipment did not alter his position. Under the compromise agreement or in default of the lease, Woodworth was required to release his possessory interest in the equipment. Upon this record we hold no waiver occurred.

## II

■ Having concluded that the district court erred in granting a directed verdict to the Woodworths, we must now examine whether the district court should have granted World Wide's motion for directed verdict or for a new trial or for judgment n.o.v. In effect, World Wide has argued that the trial court should have granted a directed verdict to World Wide or, alternatively, should have granted judgment to World Wide because of the failure of the Woodworths' affirmative defenses. One of those was the failure of consideration defense which we have already discussed. While the error in ruling on that defense forecloses the granting of a directed verdict to the Woodworths, that alone does not

---

4. By this ruling we do not hold or intimate that World Wide has nothing to account for in light of Kechter Brothers' failure to pay World Wide $134,000 for the equipment. World Wide recognizes that it may be faced with the questions of whether and to what extent the Woodworths must be given credit for the value of the equip-

ment that was turned over to Kechter Brothers for resale. The question involves legal and perhaps equitable principles that we do not address in this opinion. We only wish to note that there are genuine issues here which are neither settled nor foreclosed by our opinion.

permit a directed verdict for World Wide against the Woodworths. In fact, as we have suggested in footnote 4, *supra,* while there was not a complete failure of consideration, that issue does embrace questions of whether, on legal or equitable principles, some credit should be given to the Woodworths because of the "resale" of that equipment from World Wide to Kechter Brothers. It is not clear that the Woodworths should bear the loss of the equipment proceeds, considering the manner in which that loss occurred. We are convinced that these questions should be addressed first by the parties and by the trial court. Accordingly, a remand for a new trial is necessary.

Moreover, failure of consideration was not the only defense asserted by the Woodworths. The Woodworths also pleaded the affirmative defenses that finding water was a condition precedent to the lease and that World Wide failed to mitigate its damages. In connection with its motion for a directed verdict World Wide argued to the trial court that the evidence produced at trial did not support either of these defenses as a matter of law. The trial court ruled against World Wide—refusing, in effect, to strike either defense. For guidance on remand, we feel that it is necessary to address the court's ruling in regard to the condition precedent defense.

In contrast to the failure of consideration issue, where the facts were uncontested, the facts are hotly contested on the issue of whether finding water was a condition precedent to the lease. The substantial evidence standard noted earlier is to be utilized whether we are reviewing the denial of the motion for judgment n.o.v. or denial of the motion for a directed verdict. *Elce v. State,* 110 Idaho 361, 716 P.2d 505 (1986). Upon motions for directed verdict and judgment n.o.v., World Wide admits "the truth of the adverse evidence and every inference which may legitimately be drawn therefrom." *Curtis v. DeAtley,* 104 Idaho 787, 789, 663 P.2d 1089, 1091 (1983) (quoting *Owen v. Burcham,* 100 Idaho 441, 447, 599 P.2d 1012, 1018 (1979)) (emphasis omitted).

In denying World Wide's motion for a directed verdict, the district court stated:

> On the condition precedent, it's I think really close to being granted, but I don't think I will, I'll let that question go to the jury, so I will deny it.... I think that possibly could have some effect ... depending on what the jury decides, whether [Woodworth] contracted in the first place and I realize the proof is in my mind pretty skimpy on this, but I think it should go to the jury.

■ A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due. *Ross v. Harding,* 64 Wash.2d 231, 391 P.2d 526 (1964); RESTATEMENT § 224. A condition precedent may be expressed in the parties' agreement, implied in fact from the conduct of the parties, or implied in law (constructive) where the courts "construct" a condition for the purpose of attaining a just result. *Ross v. Harding, supra;* 3A A. CORBIN, CORBIN ON CONTRACTS §§ 631–32 (1960) (hereinafter referred to as CORBIN); RESTATEMENT § 226 comment c; *compare Continental Forest Products, Inc. v. Chandler Supply Co.,* 95 Idaho 739, 518 P.2d 1201 (1974) (recognizing express, implied-in-fact, and implied-in-law contracts). When there is a failure of a condition precedent through no fault of the parties, no liability or duty to perform arises under the contract. *Mecham v. Nelson,* 92 Idaho 783, 451 P.2d 529 (1969). *See also* 3A CORBIN § 628; RESTATEMENT § 225. A condition precedent is distinguishable from a promise or covenant in that a condition creates no right or duty of performance in itself and its non-occurrence does not constitute a breach of the contract. "A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact or event constituting a condition creates no right or duty and is merely a limiting or modifying factor." 3A CORBIN § 633. A covenant is a duty under the contract, the breach of which gives a right to enforce the contract. *Archer v. Moun-*

*tain Fuel Supply Co.,* 102 Idaho 852, 642 P.2d 943 (1982). *See also* 3A CORBIN § 633; 17 AM.JUR.2d *Contracts* § 320 (1964).

■ In examining contract disputes, our duty is to determine the intent of the parties. *Wood v. Simonson,* 108 Idaho 699, 701 P.2d 319 (Ct.App.1985). "Conditions, whether implied or express, derive from the intention of the parties, unless they are imposed by law as constructive conditions." *Hartford Federal Savings and Loan Assoc. v. Green,* 36 Conn.Sup. 506, 412 A.2d 709, 714 (1979). Whether the parties intended a condition precedent is a question of fact. *Wilkerson v. School District No. 15, Glacier County,* 700 P.2d 617 (Mont. 1985). An intention to create a condition precedent must appear expressly or by clear implication. *St. Germain v. Boshouwers,* 646 P.2d 952 (Colo.Ct.App.1982), *rev'd on other grounds, Kiely v. St. Germain,* 670 P.2d 764 (Colo.1983); RESTATEMENT § 226. As a general rule, conditions precedent are not favored by the courts. *Watson Construction Co. v. Reppel Steel & Supply Co.,* 123 Ariz. 138, 598 P.2d 116 (Ct.App.1979).

The question we must decide is whether there was sufficient evidence to deny World Wide's motion for a directed verdict and to allow the jury to determine the issue. In other words, was finding an adequate supply of water a condition precedent to the lease? We note that the lease is devoid of any express condition precedent. *See Koron v. Myers,* 87 Idaho 567, 394 P.2d 634 (1964). Hence, we must determine whether there is substantial evidence that the parties intended an implied-in-fact condition precedent. *Wilkerson v. School District No. 15, Glacier County, supra;* RESTATEMENT § 226 comment c.

Woodworth maintained at trial that his obligation to perform under the lease was conditioned upon finding an adequate supply of water. As previously mentioned, Woodworth felt confident that the wells would produce a sufficient supply of water when he signed the lease on April 15, 1977.

Subsequent to that time, the wells were tested and it was determined that an adequate supply of water was not available. Woodworth asserts that it was during this time—from May until World Wide executed the lease on June 24, 1977—that the adequate supply of water became an issue. World Wide's vice president, Leon Frick, testified that the lease did not become effective until signed by World Wide. Brent Woodworth testified that before the lease was ever signed, Van Elfin called World Wide from Woodworth's home and told Joe McClellan, a World Wide employee, about Woodworth's desire that finding water would be a condition precedent to the lease. Although Van Elfin testified that he did not remember discussing Woodworth's desire for the condition precedent, he testified that he told McClellan that the water supply was not adequate and that World Wide and Kechter Brothers had entered a collateral agreement. Van Elfin further stated that after Woodworth executed the lease on April 15, Woodworth instructed him to hold the documents. Van Elfin testified that he advised World Wide of Woodworth's concern over getting an adequate supply of water before the documents were sent to World Wide for signature. This information included the fact that the wells were not producing an adequate supply of water. Van Elfin concluded that finding an adequate supply of water "would certainly be a prerequisite to having an irrigation system" and that finding water was a condition before utilizing an irrigation sprinkler system. He further stated: "It would be ridiculous to think that anyone would need an irrigation system if you don't have water."

World Wide's business file concerning Woodworth's lease contained a notation about insurance on the equipment. The lease required that Woodworth maintain insurance for the benefit of World Wide. The business records indicated that Woodworth would not "get insurance [for the equipment] until water is going through the pipes." Michael Kechter testified that

finding an adequate supply of water "would be necessary to use the equipment." He further testified that an adequate supply of water was necessary for the use of any irrigation equipment.

 In light of this evidence, much of which was controverted, we hold that the trial court did not err by denying World Wide's motion aimed at striking Woodworth's affirmative defense of condition precedent. The record contains substantial evidence which would require that the question be given to the jury. It is for the jury to weigh the evidence and judge the credibility of witnesses. *Masters v. Dewey*, 109 Idaho 576, 709 P.2d 149 (Ct.App.1985). Because the question was not presented to the jury, we must remand for a new trial so that a jury may determine whether an implied-in-fact condition precedent existed. Although the lease purported to be "the entire integrated agreement" between the parties, evidence of contemporaneous negotiation is admissible to establish whether a document is integrated or not, or to grant relief from performance. *See* RESTATEMENT §§ 214, 209; *Costello v. Watson*, 111 Idaho 68, 720 P.2d 1033 (Ct.App.1986). Accordingly, we need not address the question of whether the district court erred in failing to grant a new trial. Because this case is being remanded for a new trial, we also find it unnecessary to discuss the evidentiary question concerning agency and whether World Wide failed to mitigate its damages.

Accordingly, we reverse the district court's directed verdict under the theory of failure of consideration, affirm the district court's denial of World Wide's motions for directed verdict and judgment n.o.v. on the issue of the condition precedent, and remand for a new trial. Because both parties have prevailed in part, we award no costs or attorney fees on appeal to either party.

WALTERS, C.J., and BURNETT, J., concur.