878 P.2d 789

**MEDICAL SERVICES GROUP, INC., Plaintiff–Counterdefendant, Appellant,**

v.

**BOISE LODGE NO. 310, BENEVOLENT AND PROTECTIVE ORDER OF ELKS, an Idaho Corporation; and Thomas T. Wright Company, an Idaho Corporation, Defendants–Counterclaimants, Respondents.**

No. 20323.

Court of Appeals of Idaho.

Filed May 19, 1994.

Petition for Review Denied Aug. 17, 1994.

Cosho, Humphrey, Greener & Welsh, Boise, for appellant. Stanley W. Welsh, argued.

Randal J. French, Boise, for respondents.

## SUBSTITUTE OPINION

The Court's prior opinion dated March 23, 1994, is hereby withdrawn.

REINHARDT, Judge Pro Tem.

This contract dispute arises from a Commercial Investment Real Estate Purchase and Sale Agreement entered into by Medical Services Group, Inc. ("Medical Services") as buyer, and Boise Lodge No. 310, Benevolent and Protective Order of Elks ("B.P.O.E."), as seller. Medical Services brought suit against B.P.O.E. and its agent, Thomas T. Wright Company, ("Wright") for the return of its earnest money after B.P.O.E. claimed that Medical Services had forfeited the earnest money by not completing the purchase of the property. B.P.O.E. and Wright counterclaimed, seeking damages. On cross motions for summary judgment, B.P.O.E. and Wright prevailed. Medical Services appeals from the district court's award of summary judgment to B.P.O.E. and Wright. We vacate the judgment, reverse the order granting summary judgment in favor of B.P.O.E. and Wright, vacate the order denying Medical Services' summary judgment motion and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS BELOW

Medical Services offered to purchase a parcel of real property from B.P.O.E. for $550,000. The parties signed a standard real estate purchase and sale agreement on September 12, 1991. The agreement provided in pertinent part that Medical Services' "offer is contingent upon Buyer securing a commit-

ment, acceptable to Buyer, for financing, by October 7, 1991." The agreement also provided that Medical Services would have until that same date "to satisfy or waive all conditions and/or contingencies." Medical Services was unable to obtain a financing commitment by October 7 because the prospective lender had not received all information, including an appraisal, that was necessary for evaluation of the loan application. Consequently, on October 7, the parties signed a letter agreement drafted by an agent of Wright which stated "... the appraisal and approval process will require approximately six weeks, which places the contingency for financing being removed at November 15, 1991."

Medical Services was still unable to acquire a financing commitment as of November 15. Nonetheless, Medical Services continued to negotiate with its bank in the hope of arranging financing so that it could purchase the B.P.O.E. property. On at least two occasions in December 1991, Medical Services gave B.P.O.E. a date for a possible closing of the transaction, but on each occasion, the closing failed to occur because the bank had imposed new financing conditions that were unacceptable to Medical Services.

In September 1991, the holder of a deed of trust on the property had begun foreclosure proceedings. Those proceedings eventuated in a foreclosure sale on January 6, 1992, at which the property was sold for $441,000.

Medical Services made a demand for return of its $5,000 earnest money, which demand was refused by B.P.O.E. In February 1992, Medical Services filed this action for recovery of the earnest money.

B.P.O.E. answered and filed a counterclaim alleging that Medical Services had waived the financing contingency and breached the sale agreement. B.P.O.E. also alleged that Medical Services was estopped to deny liability under the agreement because it had continued to seek satisfactory financing after November 15. B.P.O.E. sought damages amounting to the difference between $550,000 and the $441,000 realized on the foreclosure sale. Wright counterclaimed for its real estate commission on the sale.

Medical Services moved for summary judgment, asserting that neither party was bound by the purchase and sale agreement after November 15, 1991, because the financing contingency was neither satisfied nor affirmatively waived by Medical Services. Accordingly, Medical Services argued that no genuine issue of fact existed and that it was, as a matter of law, entitled to judgment in the amount of the earnest money.

In its cross-motion for summary judgment, B.P.O.E. asserted that the failure of the financing contingency did not terminate Medical Services' obligations unless Medical Services gave written notice to B.P.O.E. before November 15 of its intent to withdraw from the contract due to unavailability of financing. According to B.P.O.E., since Medical Services gave no such written notice, it automatically waived the contingency, and it remained obligated to purchase the property. Therefore, B.P.O.E. reasoned, Medical Services was in breach of the contract notwithstanding the failure of the financing condition. B.P.O.E. also argued that because of Medical Services' continuing efforts to purchase the property after November 15, 1991, B.P.O.E. was led to believe that Medical Services considered the contract to still be in effect, and Medical Services was estopped from contending that the contract terminated on November 15.

Following a hearing on the summary judgment motions, the district court granted summary judgment in favor of B.P.O.E. and Wright and denied Medical Services' motion. The court entered judgment against Medical Services in the amount of the forfeited $5,000 earnest money, $104,000 in damages, plus attorney fees and costs. Medical Services appeals.

ANALYSIS

In this appeal, Medical Services maintains that the district court erred in dismissing its claim for the return of its earnest money and in granting summary judgment on B.P.O.E.'s counterclaim. Medical Services contends that the availability of financing satisfactory to Medical Services was a condition precedent to its duty to purchase the property and, because that condition precedent was

not satisfied, Medical Services was relieved of any obligation to perform the contract. It asserts that its continuing efforts to obtain financing after November 15 cannot be construed as a waiver of the financing contingency. Medical Services also asserts that there is nothing in the parties' agreement requiring it to give notice of withdrawal from the agreement by November 15, 1991, and that Medical Services' continued efforts to obtain a loan in December does not raise an estoppel.

■ The issue of the existence and operation of a condition precedent presents a mixed question of law and fact. *See World Wide Lease, Inc. v. Woodworth,* 111 Idaho 880, 887, 728 P.2d 769, 776 (Ct.App.1986). In this case, where the issue is raised on appeal from a summary judgment, we examine the record to determine whether there are genuine issues of material fact and whether the prevailing party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Anderson v. City of Pocatello,* 112 Idaho 176, 731 P.2d 171 (1986). Where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate despite the possibility of conflicting inferences, because the court alone will be responsible for resolving the conflict between those inferences. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). The reviewing court will not disturb findings based on such inferences if the inferences are supported by the uncontroverted evidence. *Riverside Development Co.,* 103 Idaho at 520, 650 P.2d at 662. We freely review the lower court's conclusions of law. *Id.; Kelly v. Hodges,* 119 Idaho 872, 874, 811 P.2d 48, 50 (Ct.App.1991).

■ We look first at Medical Services' contention that the district court erred in concluding that the parties' contract did not lapse upon failure of the financing contingency. Paragraph 6 of the agreement, entitled "Additional Terms, Conditions and/or Contingencies," provides that "Buyer will have until October 7, 1991, to satisfy or waive all conditions or contingencies." As noted earlier, the parties agreed to extend to November 15, 1991, the time for the Buyer (Medical Services) to satisfy or waive the conditions.

■ A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due. *World Wide Lease, Inc., supra.* When there is a failure of a condition precedent through no fault of the parties, no liability or duty to perform arises under the contract. *Id., citing Mecham v. Nelson,* 92 Idaho 783, 451 P.2d 529 (1969). Here, Medical Services did not obtain financing by November 15, 1991. The question of whether Medical Services waived the contingency by that same date is in dispute.

■ A waiver is a voluntary, intentional relinquishment of a known right or advantage. *Scott v. Castle,* 104 Idaho 719, 725, 662 P.2d 1163, 1169 (Ct.App.1983). The existence of waiver ordinarily is a question of fact, and if there is any substantial evidence in the record to support a waiver, it is for the trier of fact to determine whether the evidence establishes such a waiver. *Riverside Development Co.,* 103 Idaho at 518, 650 P.2d at 660. Waiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive. *Soloaga v. Bannock County,* 119 Idaho 678, 682, 809 P.2d 1157, 1161 (Ct.App.1990), *citing Jones v. Maestas,* 108 Idaho 69, 696 P.2d 920 (Ct.App.1985).

The record in this case is devoid of any writing signed by Medical Services, or any verbal statement, expressly waiving the financing contingency. Further, there is no evidence that Medical Services requested an extension beyond the November 15 date within which it was to obtain financing. There are no other facts in the record which could be construed as a waiver of the financing contingency by Medical Services. Medical Services' duty to purchase the real property was subject to the condition that it obtain satisfactory financing by November 15. Medical Services' performance came due only if that event occurred or the condition was waived by Medical Services. *See* RE-STATEMENT (SECOND) OF CONTRACTS § 224 (1981). Medical Services' evidence indicates that it was unable to obtain satisfactory financing and did not waive the financing contingency by November 15, 1991. This evidence raises an issue of fact

which precludes summary judgment for B.P.O.E. If, as Medical Services contends, satisfactory financing was not obtained within the specified time, the non-occurrence of that condition prevented Medical Services' performance from becoming due and automatically discharged its duty to proceed with the purchase. *See* RESTATEMENT (SECOND) OF CONTRACTS § 225(1), (2). If this condition precedent was not met, the parties' contract is unenforceable. *McMinn v. Holley,* 86 Idaho 186, 384 P.2d 229 (1963).

 We cannot agree with the district court's holding that Medical Services had to affirmatively give notice of its withdrawal from the contract or be bound by its terms, whether or not satisfactory financing had been secured by November 15, 1991. The district court thereby imposed upon Medical Services a term that was not an agreed provision of the parties' contract. This it cannot do. Where the terms of a contract are unambiguous, courts cannot revise the contract in order to make a better agreement for one of the parties. *Galaxy Outdoor Advertising, Inc. v. Idaho Transportation Dept.,* 109 Idaho 692, 695, 710 P.2d 602, 605 (1985). Where a contract is clear and unambiguous, determination of the contract's meaning and legal effect are questions of law to be decided by the court. *Id.* Because we find no ambiguity, the contract must be construed and understood in its plain, ordinary and proper sense, according to the meaning as determined from the plain wording thereof. *Clark v. St. Paul Property and Liability Ins. Cos.,* 102 Idaho 756, 758, 639 P.2d 454, 456 (1981); *W.O. Kepler v. WHW Management, Inc.,* 121 Idaho 466, 475, 825 P.2d 1122, 1131 (Ct.App. 1992).

 The district court also found that Medical Services' efforts to acquire financing after November 15, 1991, constituted conduct amounting to estoppel. Because Medical Services had continued to seek financing and had twice scheduled a closing date after November 15, the district court concluded that Medical Services was estopped from asserting that the agreement terminated by virtue of Medical Services' inability to obtain satisfactory financing by November 15. Holding that the contract did not terminate on No-

vember 15, 1991, the district court then determined that Medical Services was liable for breach of the contract by failing to close the sale. We disagree.

 The elements of equitable estoppel include a false representation or concealment of a material fact, made with actual or constructive knowledge of the true state of facts; that the party to whom the false representation was made was without knowledge or the means of acquiring knowledge of the real facts; that the false representation was made with the intent that it be acted upon; and that the party to whom it was made relied and acted upon it to his prejudice. *Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 5, 607 P.2d 1055, 1059 (1980), *citing Bjornstad v. Perry,* 92 Idaho 402, 443 P.2d 999 (1968). The record is devoid of any false representation by Medical Services. The record shows that in scheduling the two new closing dates in December 1991, Medical Services alerted B.P.O.E. that it did not quite have its financing in place and that it had yet to accept the most recent conditions of financing imposed by the bank. This evidence, which is derived from B.P.O.E.'s affidavit in support of its motion for summary judgment, contradicts B.P.O.E.'s assertion that Medical Services had made any false representation. The mere fact that Medical Services continued to try to acquire financing after November 15 in the hope that it could still purchase the property does not amount to a misrepresentation nor an agreement to be bound by the contract that expired on November 15. After that date Medical Services no longer had a *right* to purchase the property under the contract and B.P.O.E. no longer had an *obligation* to sell it to Medical Services. We can find nothing misleading in the fact that Medical Services nonetheless remained desirous of buying the parcel and continued its effort to obtain a purchase money loan in the hope that a new transaction could be arranged. We conclude that the district court's finding that Medical Services misled B.P.O.E. into believing that Medical Services considered the contract to remain in effect after November 15, 1991, is not supported by the uncontroverted evidence. The test for equitable estoppel has not been met in this case.

B.P.O.E. also argues for application of the doctrine of quasi estoppel. Unlike equitable estoppel, quasi estoppel does not require a misrepresentation by one party or actual reliance by the other. *Keesee v. Fetzek,* 111 Idaho 360, 362, 723 P.2d 904, 906 (Ct.App.1986). To constitute quasi estoppel, the person against whom the estoppel is sought must have gained some advantage for himself, produced some disadvantage to the person seeking the estoppel, or induced such party to change his position. In addition it must be unconscionable to allow the person against whom the estoppel is sought to maintain a position which is inconsistent with the one in which he accepted a benefit. *Tommerup, supra.*

It is clear from the record that Medical Services consistently expressed a desire to purchase the property, but only with satisfactory financing in hand. Absent from the record, however, is any indication that Medical Services obtained a benefit to B.P.O.E.'s detriment by its continuing efforts to obtain financing after November 15, 1991. That Medical Services continued to seek financing after the November 15 deadline cannot be characterized as a "benefit" to Medical Services. There is no evidence that Medical Services did anything to prevent B.P.O.E. from finding another purchaser. The record does not present evidence of inconsistent conduct on the part of Medical Services or of some disadvantage to B.P.O.E. We conclude from our examination of the record that there is no evidence of conduct sufficient to invoke the doctrine of quasi estoppel.

Accordingly, we reverse the order granting summary judgment and vacate the judgment in favor of B.P.O.E. and Wright because the order and judgment were based on the district court's improper findings of waiver, equitable estoppel and quasi estoppel. As a result of our holding, we also vacate the district court's award of attorney fees to B.P.O.E. In the proceedings below, B.P.O.E. asserted that there were issues of fact regarding Medical Services' good faith in applying for financing, which would preclude summary judgment for Medical Services. Because of its decision to grant summary judgment to B.P.O.E. and Wright, the dis-

trict court did not address the question of whether a genuine issue of material fact prevents entry of summary judgment for Medical Services. Therefore, we vacate the order denying Medical Services' motion for summary judgment and remand for further proceedings in conformity with this opinion.

Costs to Medical Services on appeal pursuant to I.A.R. 40. Attorney fees to be borne by the respective parties.

LANSING and PERRY, JJ., concur.