720 P.2d 1033

**Marion L. COSTELLO and Lillian B. Costello, husband and wife, Plaintiffs-Respondents,**

v.

**Forest P. WATSON: Warren K. Luke and Joan P. Luke, husband and wife, Defendants-Appellants.**

No. 16048.

Court of Appeals of Idaho.

May 21, 1986.

Rehearing Denied July 28, 1986.

Petition for Review Denied Aug. 29, 1986.

Charles W. Hosack (Lukins & Annis), Coeur d'Alene; Thomas B. Gess, (argued), Kennewick, Wash., for defendants-appellants.

Craig R. Wise, Coeur d'Alene, for plaintiffs-respondents.

WALTERS, Chief Judge.

In this case we are asked to review a series of contractual instruments which were held by the district court to constitute an agreement to lend monies for the purchase of real property. The district court ordered the defendants, Forest Watson, Warren and Joan Luke, to convey a 10% interest in the property to the plaintiffs, Marion and Lillian Costello. On appeal, the defendants assert (a) the court erred in construing the instruments together and (b) the evidence presented at trial was insufficient for the court to conclude the Costellos were entitled to the 10% interest. We affirm.

We begin by noting that an appellant challenging the district court's findings of fact has the burden of showing clear error. I.R.C.P. 52(a). Findings of fact will not be overturned on appeal if supported by substantial and competent, though conflicting, evidence. *Stout v. Westover,* 106 Idaho 533, 681 P.2d 1008 (1984). Moreover, an appellate court will review the evidence in a light most favorable to the party who prevailed at trial. *Martsch v. Nelson,* 109 Idaho 95, 705 P.2d 1050 (Ct.App.1985). With these rules in mind, the record reveals the following facts.

Forest Watson and Warren Luke were partners engaged in constructing and developing apartment complexes. Luke requested Morris Costello, a licensed real estate agent, to locate property in Coeur d'Alene suitable for apartment development. Costello was successful and the partnership agreed to purchase the property for $85,000. Just before closing, the partners informed Costello that they did not have the funds needed to purchase the property. Luke then requested Costello's assistance in finding someone to finance the land purchase in return for a percentage of the completed apartment complex. Costello found a friend, Don Woods, who was interested in participating in the development as an investor. Consequently, Woods and the defendants entered into an agreement to finance the project. The agreement, executed September 6, 1977, provided that Woods would loan the defendants $85,000 to purchase the property. This agreement required the defendants to repay Woods $57,500 and the remaining balance of $27,500 was to be discharged by giving Woods 10% interest in the completed development. In compliance with the agreement, Watson and Luke were required to obtain a construction loan for the apartments within sixty days following the purchase of the property.

Woods established a line of credit at his bank for the $85,000 and began paying interest on the funds pending their use for the purchase of the property. Meanwhile, land prices were appreciating and the seller of the property declined to complete the sale of the property to Watson and Luke. On January 31, 1978, the defendants and Woods modified the initial agreement. This second instrument provided that Woods would be repaid all of the $85,000. In addition, he was to receive $27,500 when the project was complete and the apartments first offered for rent. The instrument stated, "Woods will not receive the ten percent (10%) equity in the development."

At trial, Woods testified that he continued to have concerns about his return on investment. The defendants, Woods, and the Costellos then executed a third instrument on February 28, 1978. This instrument was titled *"MODIFICATION OF AGREEMENT"* and specifically referred to the initial agreement as well as the recent modification of January 31, 1978. Instead of receiving $27,500 from the defendants when the apartments were first offered for rent, Woods was to receive this

amount from the Costellos. In return for paying Woods, the Costellos would receive a 10% interest in the apartment project from the defendants.

The purchase of the property continued to be delayed. Because Woods' funds were tied up in this project and subjected to continuing interest payments, Woods sought an additional modification to the parties' agreement. This fourth instrument, executed August 15, 1978, provided that Woods was to receive eight percent simple interest on his $85,000 loan. It also was entitled *"MODIFICATION OF AGREEMENT"* and recited that "the parties desire to make further changes in their agreement." This modification further provided "the entire principal balance due on the note [$85,000], together with accrued interest, shall be paid on or before October 1, 1979." The Costellos were not signatories to this instrument. The fourth instrument does not mention any 10% interest in the development. Woods testified at trial that this modification was an attempt to bring the transaction, which had lingered for almost a year, to a conclusion. Marion Costello also testified that following the execution of the fourth instrument, he and the defendants had discussions concerning his 10% interest in the development.

Finally, on August 30, 1978, the seller conveyed the property to the defendants. On the preceding day, Woods and Marion Costello executed an *"AGREEMENT"* which also provided that the Costellos would pay the $27,500 owed to Woods by October 1, 1979. This fifth instrument amended the "Modification of Agreement dated February 28, 1979" (the third instrument). When the property was conveyed, the warranty deed did not reserve a 10% interest to the Costellos. The Costellos subsequently initiated this suit.

The defendants' position both at trial and on appeal involves three contentions. First, they contend Woods repudiated the third instrument. They insist that following the repudiation, Woods and the defendants then entered into the fourth instrument which eliminated any right on the part of Woods or the Costellos to receive a 10% interest. They argue the fourth instrument is a fully integrated contract and represents the final intent of the parties. Hence, they maintain the district court should not have construed the instruments as a whole. Second, the defendants contend that any oral contract for the property interest between themselves and Marion Costello, which may have followed the repudiation, is unenforceable under the statute of frauds. I.C. § 9–503. The Costellos counter that the written instruments and their partial performance of paying Woods, eliminate the defendants' statute of frauds defense. *See* I.C. § 9–504. Third, the defendants contend the Costellos are not entitled to an interest in the property because the Costellos failed to pay Woods the $27,-500 before October 1, 1979.

The district court did not agree with the defendants' contentions. The court found that although the

> facts might well have justified the defendants in declaring a breach of the [third instrument] and refusing to go ahead with the arrangement, ... they did not do so. Each time they acquiesced in Woods [sic] further demands and continued the contractual relationship with him pursuant to the terms he was dictating. Therefore, Woods and Costello having performed their part of the contract, the defendants must now perform as they promised.

The court concluded that it would have been illogical for Woods to surrender his right to receive a return of $27,500 from the Costellos, *plus* eight percent interest from the defendants (estimated at $7,933.32), under the third instrument—and then enter into the fourth instrument. The defendants' interpretation of the fourth instrument only provided Woods a return of $7,933.32. The court declared "Woods clearly testified it was his intent to receive the $27,500 plus eight percent interest." The court also found the instruments themselves do not support the defendants' contention that the fourth instrument totally

superseded the third instrument. The court held that "[t]he second, third and fourth contracts each is [sic] identified as a Modification of the prior contracts. Therefore, they must be considered not as new and superseding contracts but construed together as one overall agreement." Finally, the court stated, "Woods accepted payment of his $27,500 from plaintiffs by accepting a note and trust deed from plaintiffs. That note and trust deed was [sic] subsequently satisfied."

I

We first consider whether the court erred in construing the instruments together. The defendants argue the instruments cannot be construed together because (1) Woods repudiated the third instrument, thereby relieving the defendants from their obligation—*i.e.*, conveying a property interest to the Costellos; (2) the Costellos were not signatories to three of the instruments; and (3) the fourth instrument represented a final and fully integrated agreement by itself. We find these arguments unpersuasive.

■ For purposes of review, we will assume *arguendo* that Woods repudiated *his* promise to perform under the third instrument. However, this assumption is not dispositive to the case. A unilateral repudiation does not, by itself, terminate all contract obligations.[1] The district court correctly noted that the "[repudiation] might well have justified the defendants in declaring a breach [but they] acquiesced in Woods [sic] further demands." The defendants also assert that under Idaho law, the Costellos were required to be parties to all the instruments before the trial court could construe the instruments together. They cite *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979) for this proposition. In *Silver Syndicate* our Supreme Court held that, absent rescission, two contracts between

the same parties dealing with the same subject matter, must be construed together. This authority is not on point with the issue presented here. The Costellos need not have signed the first two instruments because their alleged interest did not arise until the third instrument. The third and fifth instruments granted the Costellos an interest in the property. The controlling question here is, did the parties intend to abolish the 10% interest by executing the fourth instrument?

■ We begin by examining whether the fourth instrument, by itself, was fully integrated. Whether an instrument constitutes an integrated agreement is to be determined by the trial court as a question preliminary to an interpretative ruling or to the application of the parol evidence rule. RESTATEMENT (SECOND) OF CONTRACTS § 209(2), comment c (1981). Here, the fourth instrument does not state that it was the final expression of the parties' intent; rather, entitled *"MODIFICATION OF AGREEMENT,"* it specifically declared three times in its text that "this modification" changes the instrument dated September 6, 1977. The fourth instrument did not purport to express, to the exclusion of the other instruments, the overall intent of the parties. Thus, the district court was required to examine the relationship among the instruments.

■ Next we address whether the fourth instrument was a substitute for, and cancelled, the previous instruments. The making of subsequent contracts which deal with the same subject matter as an earlier contract, does not necessarily abrogate an earlier contract. *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979). To effect a rescission of previous contracts,

the new contract must either explicitly rescind the earlier contract, or deal with the subject matter of the former contract

---

1. Because of our holding, we need not determine the effect of Woods' alleged repudiation on the *defendants'* promise to convey the property interest to the Costellos under the third instrument. We note that any party to a tripar-

tite contract (*e.g.,* the third instrument in this case) may insist upon the performance of every promise made *for his benefit* by the party or parties who made it. 17 AM.JUR.2d *Contracts* § 299 (1964).

so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together.

*Id.* at 235, 611 P.2d at 1020, *citing Commercial Nat'l Bank of Charlotte v. Charlotte Supply Co.*, 226 N.C. 416, 38 S.E.2d 503 (1946). Here, the fourth instrument did not specifically purport to rescind any of the preceding instruments. Indeed, it stated that it "modified" the first instrument. We conclude that the fourth instrument on its face was not a substitute for the previous instruments.

■ Once a trial court ascertains that the earlier contracts have not been rescinded, the instruments "must be read and construed as one in order to determine the intent of the parties and what portions of the agreements are still enforceable." *Id.* As a rule of interpretation, "all writings that are part of the same transaction are interpreted together." RESTATEMENT (SECOND) OF CONTRACTS § 202(2) (1981). Here, the first instrument provided Woods a 10% interest; the second instrument terminated the interest; the third instrument revived the interest, granting it to the Costellos; the fourth instrument was silent as to the interest; and the fifth instrument confirmed that the Costellos were to receive the interest.

It might be argued that the instruments were ambiguous. But even if we assume *arguendo* that they were, their interpretation would turn upon the district court's finding of intent, based upon the parties' testimony. *Wood v. Simonson*, 108 Idaho 699, 701 P.2d 319 (Ct.App.1985). Woods testified at trial

*all these documents go together in my opinion.* You start out with one where you purchased the property and then you come to the [second instrument] where I'm not going to participate more but just receive money because of an interest in the property. Then you come to the next one [third instrument] where Mr. Costello's going to get involved in it be-

cause he wants the 10 percent of the total project and he in turn is going to pay me the fee for that. So then we come to Number 4, where we are going to have to set a date and try to get this thing settled one way or the other and they, Luke and Watson, are going to pay the 85,000 plus the 8 percent interest and Mr. Costello, from the previous agreements, which come together, will pay the [$27,500]. [Emphasis added.]

Woods explained that the only difference between the third and fourth instruments was the addition of the October 1, 1979 time limit for repayment. Mr. Costello's testimony also confirms that his understanding of the entire transaction was that "If I put up the 27,500 I would have ten percent of the land." In contrast, Warren Luke testified that he thought the fourth instrument was an "entirely new agreement" despite the title of the instrument. Watson stated the partners would not have agreed to the fourth instrument, which reserved an interest to a party other than the partnership, because such a reservation "could cloud the title" and jeopardize the construction loan. However, when asked why he had agreed to the first and third instruments (which did reserve the 10% interest), Watson replied the only difference was that he was aware of the reserved interests in those instruments. The district court accepted Woods' and the Costellos' interpretation of the parties' intent. The written and testimonial evidence, though conflicting, supports the district court's findings of fact. We will not disturb that determination. Consequently, it is unnecessary for us to discuss whether the statute of frauds would have precluded the defendants from agreeing orally, as well as in writing, to give a 10% interest to the Costellos.

II

Finally, the defendants assert that the Costellos are not entitled to any interest in the property because the Costellos did not actually pay Woods. The defendants contend the Costellos' agreement to pay

Woods $27,500 for the 10% interest in the property is unenforceable due to a failure of consideration.

■ Although the record does not reveal that the Costellos paid Woods in cash, Woods testified he received the Costellos' payment by acquiring a $27,500 interest in a piece of real property located in Virginia. The district court admitted a quitclaim deed which indicated the Costellos conveyed a $27,500 interest in that property to Woods. Eventually, Woods purchased all of the Costellos' interest in the Virginia property. The court also admitted the closing statement from the Virginia property transaction. The statement, acknowledged by Woods, shows he received a $27,500 credit towards the final purchase price of the property. As we recently said in *Perry v. Schaumann*, 110 Idaho 596, 598, 716 P.2d 1368, 1370 (Ct.App.1986) an "acknowledgement of payment is prima facie evidence of that payment." The closing statement as well as the testimony of Woods and Marion Costello amply support the court's conclusion that the Costellos paid Woods.

The judgment of the district court is affirmed. Costs to the Costellos. No attorney fees on appeal.

SMITH, J., Pro Tem., concurs.

BURNETT, J., concurs in the result only.