**In re Gary J. BUTLER and Cheryl C. Butler, Debtors.**

**Bankruptcy No. 92–03445.**

United States Bankruptcy Court, D. Idaho.

Oct. 8, 1993.

G.W. Haight, Coeur d'Alene, ID, for debtors.

Edward W. Kok, Lukins & Annis, Coeur d'Alene, ID, for Runge Finance Co.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Debtors Gary and Cheryl Butler ("debtors") have filed this motion to avoid the lien of Runge Finance Company ("Runge Finance") under 11 U.S.C. § 522(f)(2). Runge Finance opposes the motion on the grounds their lien is a purchase money security interest ("PMSI") not subject to avoidance under that section.

### FACTS

The record shows debtors purchased furniture from Runge Furniture Company ("Runge Furniture") on four separate occasions. These purchases were financed by Runge Furniture.[1] The first agreement is not at issue in this case, and evidence was not presented regarding the first agreement.

The second transaction took place on February 6, 1989. (Hereinafter, this agreement shall be referred to as the "second agreement.") Debtors purchased a color television and VCR from Runge Furniture, and financed the purchase. The "Conditional Sale Security Agreement" shows a cash price of $979.90, plus a previous balance of $1,009.79 (presumably from the first agreement). Payments were to be spread over 36 months, at an interest rate of 16.24%. A UCC–1 financing statement covering the television and VCR was filed with the Idaho Secretary of State.

The third transaction took place on May 11, 1990. (Hereinafter, this agreement shall be referred to as the "third agreement.") Debtors purchased a dinette set with an extra chair, a sofa and love seat, and a recliner, again financing the purchase. The previous balance from the second agreement was "rolled over" into the third agreement, and added to the purchase price. The Conditional Sale Security Agreement for this transaction is substantially similar to the second agreement, with the exception of the

amounts. Payments were again to be spread over 36 months, at an interest rate of 16.24%, and a UCC–1 financing statement was filed with the Idaho Secretary of State covering the property purchased in this transaction.

Unlike the second agreement, however, an addendum to the agreement was also executed. This addendum provided for: (1) the creation of a purchase money security interest in the purchased goods in favor of Runge Furniture; (2) the addition of the unpaid balance of the previous two agreements into the third agreement, and that all terms of the third agreement applied to the goods sold under the previous agreements; and (3) the creation of a purchase money security interest in the goods sold under the previous agreements.

The fourth and final agreement was executed on December 28, 1990. (Hereinafter, this agreement shall be referred to as the "fourth agreement.") Debtors purchased numerous pieces of furniture, including a camcorder, and again financed the purchase price. The Conditional Sale Security Agreement for this transaction is substantially similar to the second and third agreements, with the exception of the amounts. Payments were again to be spread over 36 months, at an interest rate of 16.24%, and a UCC–1 financing statement was filed with the Idaho Secretary of State covering the property purchased in this transaction.

As with the third agreement, an addendum to the fourth agreement was also executed. This addendum differed substantially from the addendum to the third agreement, in that it: (1) notes the existence of the prior purchase agreements and the property sold by those agreements; (2) states that the unpaid balance of the purchase price is being consolidated in this agreement for financing purposes, but that no obligation of the debtors is satisfied by the consolidation; (3) states that notwithstanding the consolidation, Runge Furniture retains a PMSI in the property from the previous agreements; (4) provides that the consolidated payment will be first

---

1. The parties have not tendered an explanation as to why the agreements are with Runge Furniture, but Runge Finance is appearing in this case. Presumably, Runge Furniture assigned the notes to Runge Finance at some point.

applied to payment of the balance remaining on the oldest purchased items; and (5) provides that the PMSI is released on each item as payments are completed on that item's purchase price.

## DISCUSSION

Section 522(f) of the Bankruptcy Code permits a debtor to avoid a nonpossessory, non-purchase-money security interest in certain types of exempt property.[2] The only issue presented in this case is whether the property sold under the second and third agreements was converted from a PMSI to a nonpurchase-money security interest by the consolidation of the purchase price in subsequent agreements. The parties apparently agree that the property sold under the second and third agreements otherwise meets all of the requirements for avoidance under section 522(f).

A "purchase money security interest" is defined under Idaho law as follows.

A security interest is a "purchase money security interest" to the extent that it is

\* \* \* \* \* \*

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

I.C. § 28–9–107.

The Ninth Circuit Court of Appeals has interpreted U.C.C. § 9–107 in the context of lien avoidance under section 522 of the Bankruptcy Code. In *Matthews v. Transamerica Fin. Services (In re Matthews)*, 724 F.2d 798 (9th Cir.1984), the debtor had purchased a piano and stereo, giving the creditor a purchase money security interest in exchange. Subsequently, the debtor and creditor agreed to refinance the debt. The remaining bal-

ance due under the old agreement was paid off with the proceeds from the new agreement, and the debtor received some cash as well. The Ninth Circuit held that the creditor lost his PMSI by this action.

The seminal case in this area well defines the law on this subject: "The purpose of the renewal note was to pay off the original note, an antecedent debt. The purchase money character of the security interest was extinguished when the proceeds from the first renewal note were used to satisfy the original note."

*Matthews, supra,* 724 F.2d at 801 (quoting *In re Jones,* 5 B.R. 655, 657 (Bankr.M.D.N.C. 1980)).

The essence of a refinancing that violates the *Matthews* decision is the substitution of an entirely new obligation for an old one. If the "refinancing" merely constitutes a modification of the terms of the previous contract, then the nature of the debt as one incurred in order to acquire the property remains the same, and the security interest is a PMSI. *See Matthews, supra,* 724 F.2d at 801 & n. 5 ("Lenders will not be discouraged from refinancing under the rule. The lender can just as easily extend payments under the old loan as well as issue a new loan."). In contrast, if the refinancing constituted a novation of the prior debt, such that the old debt was discharged and a new obligation substituted, then the credit was not granted to enable the debtor to obtain the property, and it is no longer a PMSI.

Under Idaho law,

the making of a second contract dealing with the subject matter of an earlier contract does not necessarily abrogate the former contract. To have the effect of complete rescission, the new contract must either explicitly rescind the earlier con-

---

**2.** Section 522(f) provides in part:
Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, ... [or] appliances ... that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; ....
11 U.S.C. § 522(f)(2)(A).

tract, or deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together.

*Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 235, 611 P.2d 1011, 1020 (Idaho 1979). *See also Costello v. Watson*, 111 Idaho 68, 71–72, 720 P.2d 1033, 1036–37 (Idaho App.1986) (same).

### 1. *Effect of the Fourth Agreement.*

■ The fourth agreement in this case did not constitute a novation of the previous instruments. The parties did not demonstrate an intent, clear on the face of the documents, to extinguish the old obligation. *Cf. Matthews, supra*, 724 F.2d at 801 ("[I]n this case Transamerica unequivocally expressed its intent to make a new loan 'to pay net balance due.'"). To the contrary, the fourth agreement indicates an intent to retain the validity of the old obligations. The addendum to the fourth agreement states that "[t]here has been no satisfaction of any obligation of the Buyer as a result of this consolidation," and that "the Seller *retains* a purchase money security interest in" the collateral to the previous agreements, the consolidation of the unpaid purchase prices notwithstanding. Addendum to Conditional Sale Security Agreement dated December 28, 1990 (emphasis added).

Nor does the contract "deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution." For the reasons stated, the fourth agreement demonstrates an intent to modify or amend the prior agreements, not to rescind them entirely. *See Costello, supra*, 111 Idaho at 72, 720 P.2d at 1037 (no novation where instrument did not specifically purport to rescind previous instruments, and stated that it "modified" one of the previous contracts).

### 2. *Effect of the Third Agreement.*

■ However, the third agreement did constitute a novation of the first and second agreements. The terms of the addendum to the third agreement are different from those found in the fourth agreement's addendum, and indicate an intent to replace the prior agreements. The addendum to the third agreement provides:

Seller has sold to Buyer and Buyer has purchased from Seller, the additional goods described on previous Conditional Sale Security Agreement(s) dated 4–20–88, 2–6–89, _____, copies of which are attached hereto and made a part thereof. Seller is adding the purchase of additional goods above described to Buyers *existing* Security Agreement (s), dated 5–11–90, _____, and _____, (hereinafter referred to as "Agreement"), in accordance with the provisions of the Agreement, and except as supplemented hereby, all terms and conditions of the Agreement, *and except as supplemented hereby, all terms and conditions of the Agreement [sic] shall apply equally to the additional goods.*

Addendum to Conditional Sale Security Agreement dated May 11, 1990 (emphasis added). This paragraph of the addendum differentiates between the prior agreements and the third agreement, which is termed the "existing" agreement. All of the third agreement's terms are stated to apply to the additional goods.

Rather than *retain* a PMSI, the addendum provides that "Seller shall have and is hereby granted and created in favor of Seller, a purchase money security interest in the additional goods ... to secure payment of the Consolidated Total of Payments and all other sums payable by Buyer provided for in the attached Conditional Sale Security Agreement and Agreement." The addendum thus uses words of creation, not of retention, and speaks of securing only the third agreement. While the addendum makes copies of the previous agreements a part of the third agreement, none of the terms of the previous agreements retain any validity; it appears the only purpose for such inclusion was to provide a description of the collateral. The third agreement is otherwise complete in its terms. The payment terms, including interest rate and date of maturity, are all set forth in full in the third agreement. While the interest rates do not change from agree-

ment to agreement, the maturity date for the third agreement would be more than one year after the maturity date of the second agreement.[3]

The third agreement was thus a novation of the first and second agreements. The third agreement demonstrates an intention to revoke the prior agreement and substitute the third agreement, and the terms of the third agreement "deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution."

### 3. Effect of Combining Nonpurchase Money Security Interests with Purchase Money Security Interests.

Debtors also contend the fourth agreement's PMSI is transformed to a nonpurchase-money security interest by the merging of PMSI debt and nonpurchase-money security interest debt. The rationale for this argument is that the goods purchased become security for a debt other than their purchase price. Debtors cite in support *Sims Furniture Co., Inc. v. Trotter (In re Trotter)*, 12 B.R. 72 (Bankr.C.D.Cal.1981); *Landaus of Plymouth, Inc. v. Scott (In re Scott)*, 5 B.R. 37 (Bank.M.D.Pa.1980).

■ The Bankruptcy Appellate Panel for the Ninth Circuit has rejected this argument. *Transamerica Fin. Services v. Matthews (In re Matthews)*, 20 B.R. 654, 656–57 (9th Cir. B.A.P.1982), *reversed on other grounds*, 724 F.2d 798 (9th Cir.1984). The Panel conclud-

ed that, where the amount of the purchase price is distinguishable from the nonpurchase-money indebtedness, commingling of PMSI and non-PMSI debt does not destroy the PMSI. 20 B.R. at 657. "We therefore conclude that Transamerica's security interest is not avoidable under 11 U.S.C. § 522(f)(2) unless, on remand, the trial court is unable to determine the amount of total indebtedness that is allocable to the purchase price." *Id.* "In making that determination, the court may use any appropriate formula, whether based on statute, contract, common law or generally accepted accounting practice." *Id.* In reversing *Matthews*, the Ninth Circuit suggested this portion of the Panel's decision was correct. 724 F.2d at 800 n. 3 ("[W]e do not reach the debtors' alternate contention that collateral cannot secure more than its own value without destroying the purchase money security interest. The weight of authority appears to be against the debtors on this point."). The *Trotter* case, relied upon by the debtors, also supports this conclusion. 12 B.R. at 74 (differentiating case with contractual provision for application of payments).

■ Idaho law provides for the manner in which payments are applied to consumer security interests. I.C. § 28–43–303.[4] The fourth agreement also contains a contractual provision detailing how payments are to be applied to the various secured items; this contractual provision does not differ substan-

---

**3.** These statements regarding the completeness of payment terms and the change in the maturity date could also be made regarding the fourth agreement. These factors have different significance between the third and fourth agreements, however, because the parties had different intentions in the third and fourth agreements. The third agreement expressed an intention to substitute its terms for those of prior contracts, and therefore complete payment terms with changes from terms found in prior contracts support the conclusion the third agreement is a novation. Completeness of payment terms does not suggest a novation in light of the fourth agreement's expressed intention to alter and not rescind the previous agreements, and those terms that are different in the fourth agreement are mere amendments or modifications of the prior contracts.

**4.** Section 28–43–303 provides in part:

If debts arising from two (2) or more regulated consumer credit sales, except sales pursuant to open-end credit, are secured by cross-collateral, section 28–43–302, Idaho Code, or consolidated into one (1) debt payable on a single schedule of payments, and the debt is secured by security interests taken with respect to one or more of the sales, payments received by the seller after the taking of the cross-collateral or the consolidation are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been first applied to the payment of the debts arising from the sales first made. To the extent debts are paid according to this section, security interests in items of property terminate as the debt originally incurred with respect to each item is paid.

I.C. § 28–43–303(1).

tially from the allocation provided for by section 28–43–303. There is thus a method to determine what part of the debt remains PMSI, and what part is nonpurchase-money. Because there is a method by which to determine the amount of indebtedness attributable to the purchase price, the commingling of PMSI and non-PMSI debt in both the third and fourth agreements did not transform any PMSI to a nonpurchase-money security interest.

## CONCLUSION

The collateral purchased under the first agreement is not at issue in this case. Because the third agreement constituted a novation of the second agreement, the debt was not incurred for the purpose of purchasing the collateral to the second agreement, and Runge Finance does not have a PMSI in that collateral. The fourth agreement did not constitute a novation of the third agreement, however, and so Runge Finance retains its PMSI in property purchased under the third agreement. Runge Finance also retains a PMSI in the property purchased under the fourth agreement. The commingling of PMSI debt with non-PMSI debt in the third and fourth agreements did not transform the PMSI to a nonpurchase-money security interest. Debtors are therefore entitled to avoid the liens against that property purchased by the second agreement; namely, the color television and VCR. Debtors may not avoid the liens against property purchased under the third or fourth agreements.

A separate order will be entered.